STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. GER-ARDO TREFICANTO, PLAINTIFF IN ERROR.

Submitted October 26, 1928—Decided May 20, 1929.

For the plaintiff in error, *Harold Simandl.*

For the defendant in error, *Joseph L. Smith,* prosecutor of the pleas, and *Frank B. Bozza,* assistant prosecutor.

The opinion of the court was delivered by

WALKER, CHANCELLOR. The defendant, Gerardo Treficanto, was indicted with Joseph Caputo for the murder of Ammiello Tamburro, on March 10th, 1928. At the close of the evidence and on application for Caputo (no objection being made), verdict of acquittal was directed in his favor.

On motion of counsel at the close of the case all testimony admitted against Caputo, and the statement admitted as having been made by him, were ordered stricken from the record. The trial then proceeded against Treficanto alone, and at its conclusion the jury returned a verdict of guilty of murder in the first degree against him and recommended life imprisonment, which was afterwards imposed by the presiding judge. A writ of error was then sued out of this court to review the judgment.

There is no certificate of the chancellor in the printed transcript, disallowing a writ to the supreme court as a writ of grace, so that it might then be sued out of this court as a writ of right. In *State* v. *Giberson,* 94 *N. J. Eq.* 25, defendant was convicted of murder in the first degree with recommendation to life imprisonment, under *Pamph. L.* 1919, *p.* 303, and that sentence was imposed; and (at *p.* 29), it was held that application in such a case for allowance of a writ of error should be made to the chancellor under the established procedure in this state. In *State* v. *Merra,* 99 *N. J. Eq.* 480, there were two defendants, one convicted of murder in the first degree without recommendation, and the other with recommendation, and application was made on behalf of both for a writ of error out of the supreme court, which was denied, and that permitted the prisoners to sue out the writ from this court; and the proceedings in both cases, although before the chancellor as a statutory magistrate or agent, were docketed in the court of chancery under *Pamph. L.* 1915, *p.* 28.

Now, an examination of the files of the case at bar in the office of the clerk of this court, discloses the fact that a certified copy, by the clerk in chancery, of the chancellor's certificate denying the writ of error applied for, was filed, and that thereupon counsel for the prisoner sued out a writ of error from this court, which was in accordance with the procedure, and is right; but, counsel should have printed the certificate of denial with the record in this case, and relieved this court of sending for the original files to find out whether or not the statute in that behalf had been obeyed and the established practice followed.

On behalf of Treficanto, the prosecutor of this writ, there are eleven assignments of error and ten reasons for reversal filed in the cause, in many respects the same; and the contentions for Treficanto are argued under five points. These will be taken up, considered and disposed of in their order.

1. "The verdict is against the weight of evidence."

The facts of the case are as follows: The killing took place in the apartment of Caputo, on the ground floor, rear, of 72 Hayes street, Newark, and there were present at the time Joseph Caputo, Gerardo Treficanto (slayer), Ammiello Tamburro (deceased), Laura Smith, Louise Waldron and Mary Brennan.

Louise Waldron came to clean Treficanto's apartment on Saturday morning, March 10th, 1928, as was her custom. About noon she went across the hall to Caputo's apartment. There she found Caputo, Laura Smith, Mary Brennan and Tamburro, the man who afterwards was shot; the party were drinking wine; Treficanto went over, refused a drink, and said to Louise Waldron: "Are you coming over?" (to his apartment), and she said: "In a few minutes," but did not go; she stayed with the company, eating and drinking. Treficanto went back several times, and at last she made an indecent and profane remark to him and he went back to his apartment and procured her coat and scarf, returned and threw them in her lap, slapped her face and went out. Later he came back with a small gun and began to shoot; Caputo had a gun in his hand and fired three shots; Waldron went out and saw a man (Tamburro) lying on the floor, face downward; she says she heard three shots from each gun; Treficanto and Caputo were firing at each other; Treficanto then disappeared through the door and went into the yard, and then two shots came through the window. A member of the Newark police, as the result of information, overtook Treficanto on the street and searched him and found a 32-calibre revolver and a knife in his pockets, and took him into custody; the revolver and knife were identified upon the trial. Two officers went to the house and saw a man lying on the floor; this was Tamburro, the one who died; they made a search

of Treficanto's and Caputo's apartments, found a box of bullets in the bureau in Treficanto's bedroom, and an automatic gun and revolver were found in the drawer where the bullets were. The autopsy on the body of Tamburro showed three bullet wounds, two of 22-calibre lead bullets and one of 32-calibre steel-jacketed bullet; the cause of death being a bullet wound producing extensive hemorrhage into the pleural and abdominal cavaties, with a combination of shock. All these facts are clearly to be spelled out of the testimony of Laura Smith, Mary Brennan, Harrison F. Martland, Thomas O'Mara, William A. Jaeger, Joseph Farrell, Frederick Schalk, Joseph Harris, Joseph Cocozza and Raffaele · Capodonna. There were several other witnesses for the state, who gave rather unimportant testimony. The jury were clearly justified in finding that Treficanto shot and killed Tamburro, although doubtless he intended Caputo to be the victim.

Treficanto called two witnesses, Dr. Godfrey and John Sylvestro, who gave unimportant testimony. He himself testified, saying that Caputo remarked that on account of the woman (Waldron) they were going to kill each other; that he and Caputo drank some wine; that Caputo punched him, and he heard two shots and then fell on the floor and pulled out his gun, a 22, and shot twice from the floor, got up and shot twice in the air; that all were drunk and he did not remember himself (meaning, doubtless, he did not remember what happened) ; shot after he was hit, fired about four shots; denied that he fired any shots through the windows; after firing, went into his room and put the gun in his bureau; the other guns there belonged to Louise Waldron (although she denied it), but one of them was his; he bought the box of automatic 32-calibre bullets in New York; when he took one gun back he put one, fully loaded, in his pocket, the one that was on him when arrested; also the knife, which he said he used to clean his pipe.

On March 12th, 1928, Treficanto made a voluntary statement to Detectives Cocozza and Capodonna of the Newark police department. Its genuineness and voluntary character were not disputed on the argument. In it he said, among

other things, that he called three or four times at Caputo's apartment for Louise Waldron and she at last told him to go to hell and he slapped her in the face; that Caputo became angry and he and his friends started to strike him and he heard three shots of a revolver and got out his 22-calibre revolver and fired five or six shots and went to his apartment and put the revolver in a bureau drawer and took his Smith and Wesson, of 32-calibre, and put it in his pocket and started to go out, when he was arrested; he identified both revolvers. Cocozza and Capodonna proved the statement, which was headed: "Voluntary Statement of Gerardo Treficanto," and was signed by him. Capodonna said that everything that Treficanto told was taken down; the statement was written in Italian by witness and translated into English. The original is in Italian. The translation is perfect and was signed by Treficanto.

Thus it will be seen that the weight of the evidence, to which Treficanto himself contributed by his testimony and his voluntary statement, was clearly with the state and not with the defendant.

Both sides then rested and the judge then said that he was of opinion that there should be a direction of a verdict in favor of Caputo; and as to the defendant Treficanto the case would be submitted to the jury for decision. The jury accordingly rendered a verdict of not guilty as to Caputo; and then, on motion, all testimony admitted against the defendant Caputo, and also his statement, were stricken out. The case was then submitted to the jury as to Treficanto alone, and (as already stated) they returned a verdict that he was guilty of murder in the first degree, and recommended him to imprisonment at hard labor for life; and to that he was sentenced.

On the question of a verdict being against the weight of the evidence in a criminal case, certain principles of law come in aid of a verdict of guilty. One is that under *Pamph. L.* 1921, *p.* 951, in all cases where the entire record is brought up with the writ of error, if from consideration of the entire evidence it appears that the verdict was not against its weight,

the court will not go further and consider whether the defendant was guilty beyond a reasonable doubt. *State* v. *Fischer*, 97 *N. J. L.* 34, 36; *affirmed*, 98 *Id.* 293.

To justify the setting aside of a verdict as against the weight of the evidence that fact must be so clear as to give rise to an inference that the verdict was the result of mistake, passion or prejudice. *State* v. *Grace*, 98 *N. J. L.* 341; *Leary* v. *West Jersey and Seashore Railroad Co.*, 1 *N. J. Mis. R.* 549, 550; or partiality also. *State* v. *Karpowitz*, 98 *N. J. L.* 546.

And the court should not set a verdict aside even though in its opinion the jury might, upon the evidence, have found otherwise. *Queen* v. *Jennings*, 93 *N. J. L.* 353, 355; *State* v. *Grace, supra.*

Even if the defendant's witnesses had outnumbered those of the state that would afford no ground for setting the verdict aside as against the weight of evidence. *Bowell* v. *Public Service Corp.*, 77 *N. J. L.* 231; *State* v. *Grace*, 98 *Id.* 342; *State* v. *Karpowitz, supra; Barwick* v. *Blauvelt*, 2 *N. J. Mis. R.* 270; *Fornerotto* v. *Board of Public Utility Commrs.*, 105 *N. J. L.* 28.

If there be testimony supporting a charge laid in an indictment the question of the defendant's guilt or innocence becomes one for the determination of the jury, and is not a court question. This is said by this court in connection with consideration of a conviction being against the weight of evidence, under the statute above referred to, and the court further said that the competence of the evidence is not to be considered; that it is not to be weighed after eliminating such testimony as the court, upon review, might feel was improperly admitted, but is to be weighed as it was presented to the jury in its totality. *State* v. *Morehous*, 97 *N. J. L.* 285, 296; *State* v. *Lanto*, 99 *Id.* 94.

2. "It was error for the trial court to refuse to permit Sylvestro to testify as to what he said to the defendant."

Counsel for the defendant Treficanto in his brief cites no authority for the proposition here put down. He argued that Treficanto testified that when he was threatened by

Caputo and started for the police station to summon the police he was persuaded against doing so by Sylvestro. What this legally has to do with the shooting, or other proceeding in the case, is not perceived. If Sylvestro persuaded him not to summon the police, that statement bears no relation whatever to the murder, which it preceded, and it is incompetent and inadmissible. Counsel also argues that the testimony was not a self-serving declaration of the defendant but one by a third person, which was corroborative of Treficanto's statement that when he was threatened by Caputo he started to summon the police. It was a self-serving declaration, which, of course, was inadmissible; and so far as it concerns any reply by Sylvestro it was the declaration of a third party as to an immaterial fact, and was consequently incompetent. This is the whole of the exception and the argument. The matter has no validity whatever.

3. "It was error for the trial court to charge the jury: 'You must remember that the position of Caputo was a very different one from that of this defendant, Treficanto,' and, further, 'This was in his castle and I have ruled that what he did was in the protection of it and therefore he must be found not guilty.'"

Again, on this point counsel for Treficanto cites no authority. It may be that the position of Caputo and that of Treficanto were very different. It was different to an extent, but that points out no error; and, what the judge said as to Caputo's apartment being his castle, and that he was entitled to protect it, and was, therefore, not guilty, is a matter of which Treficanto cannot complain. It is not perceived how it harmed him in the slightest. The argument of counsel for defendant is that this portion of the charge was not merely comment upon the evidence but was invading the province of the jury to determine that fact for themselves; but, as pointed out, if the jury had determined that fact it would not bear upon the question of Treficanto's guilt. Again, counsel alleges that the question the jury had for decision was as to whether or not Treficanto had fired in self-defense. There was testimony to show that he did not, and if the testi-

.mony was in dispute, it was for the jury to say what the fact was. The defendant Treficanto can take nothing by this objection.

4. "The trial court erred in charging the jury: 'If the defendant's faculties were so prostrated by intoxication that he could not form this intention, then, of course, he could not form it to such an extent as it may be essential in any crime, and it is absent because he could not form it by virtue of intoxication, of course there can be no conviction of that crime or degree of crime.' "

Counsel for defendant, Treficanto, cites in support of his contention the case of *Wilson* v. *State,* 60 *N. J. L.* 171 (*Court of Errors and Appeals,* 1897), and says that in that case the court laid down the rule: "If the evidence is sufficient to satisfy the jury that the intoxication of the accused at the time of the homicide was so great as to prostrate his faculties and render him incapable of forming the specific intent to kill which is the essential ingredient of murder of the first degree, the prisoner will not be entitled to acquittal, but his offense will be murder in the second degree." This is to be found at *page* 185, and is an excerpt from the charge of Mr. Justice Depue in *State* v. *Martin,* in the Essex oyer and terminer in 1881; affirmed in supreme court, 1883. It is pertinent to remark that the learned justice proceeded further to say: "You should carefully discriminate between that excitable condition of the mind produced by drink, which is not incapable of forming an intent, but determines to act on a slight provocation, and such prostration of the faculties by intoxication as puts the accused in such a state that he is incapable of forming an intention from which he shall act. 4 *N. J. L. J.* 339 (1881)."

Mr. Justice Van Syckel wrote the opinion in *Wilson* v. *State,* and he went on to say, at *page* 185: "As observed by the learned judge in the Martin case, this rule should be applied with caution, that no undue or dangerous immunity or license be given to crime by persons whose passions are inflamed by drink." And, further: "So long as the mind of the criminal is capable of conceiving the purpose to kill, he must be held to the responsibility of one who is sober, and that is the language of the cases upon this subject."

It is pertinent to observe in this case that a man who could go from his room to Caputo's and return several times, as Treficanto did; deliberately go there for his pistol and go back and use it in an endeavor to shoot Caputo, is evidence from which the jury could conclude, and doubtless did conclude, that Treficanto's faculties were not so far prostrated by intoxication as to render him incapable of forming an intent to kill.

While it is raised in an assignment of error and also in a cause for reversal, nevertheless, it is not argued and may be considered as abandoned, and therefore need not be decided, yet it is pertinent to observe that although Treficanto's shots were undoubtedly intended for Caputo, if he hit and killed Tamburro he is equally guilty.

In *State* v. *Bectsa,* 71 *N. J. L.* 322, this court, speaking by Mr. Justice Garrison, at *page* 326, said: "A further point * * * is that the court charged the jury that if they found that the death of Minnie Root resulted from a pistol shot intended for another person, the question of the defendant's guilt and the *degree* of his guilt, if guilty, is to be determined precisely the same as if the bullet had killed the person for whom it was intended. This the court charged and rightly so. Such is the exact meaning of the statute of this state creating and defining the degrees of murder." See, also, *State* v. *Gallagher,* 83 *Id.* 321.

5. "The trial judge erred in refusing to grant a separate trial."

Counsel for Treficanto says in his brief that the power to grant separate trials resides in the discretion of the trial court, unless there has been an abuse of that discretion. He contends that there has been an abuse of discretion because the facts disclosed an affray between two men whose interests were hostile and antagonistic. Without quoting and considering all the arguments advanced on behalf of Treficanto, and which are without merit, it is sufficient to say that counsel contends that everything in Treficanto's case, his testimony, the benefit of a reasonable doubt and the presumption of innocence, were cast aside by a judicial finding (as to Caputo)

354

which the jury witnessed and were informed of, and which they, as laymen, would naturally respect. They did, of course, respect it. They were instructed to acquit Caputo, which they did. But to say that because Caputo's acquittal was directed that Treficanto had no chance thereafter to have his story weighed and his case fully considered (as counsel asserts) is without merit or even justification.

The court said: "The jury is instructed that this statement [Caputo's] is not binding upon the other defendant [Treficanto] and only binding on the defendant who made it [Caputo]:" and, again: "As far as the other defendant [Treficanto] is concerned it is to be disregarded." Now, when the jury was directed to return a verdict of not guilty for Caputo, counsel moved to strike out his statement, and that was accordingly done. The record in regard to this statement certainly spells no harm to Treficanto. The trial court's instructions to the jury, when in favor of a defendant, protect him.

It is well settled in this state that a refusal of a severance is a matter of discretion, and not reviewable on error. *State* v. *Nixon,* 86 *N. J. L.* 371, 372; *State* v. *Bossone,* 88 *Id.* 45, 46; *State* v. *Tonghanni,* 96 *Id.* 63. Besides, the ordering or refusal of a severance precedes the trial and is not a manifest wrong or injury suffered on the trial within § 136 of the Criminal Procedure act, *Ibid, page* 64. The plaintiff in error can take nothing by this objection.

The views above expressed lead to the conclusion that the judgment of the Essex oyer and terminer should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.