15 N.J. Super. 483 (1951)
83 A.2d 622
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THEODORE NARUSHEF, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1951.
Decided October 5, 1951.
*485 Before Judges JACOBS, EASTWOOD and FREUND.
Mr. H. Russell Morss, Jr., argued the cause for the plaintiff-respondent (Mr. Edward Cohn, attorney).
Mr. Samuel Rothbard argued the cause for the defendant-appellant (Messrs. Rothbard, Harris & Oxfeld, attorneys; Mr. Abraham L. Friedman, of counsel).
*486 The opinion of the court was delivered by EASTWOOD, J.A.D.
Defendant appeals from a judgment of conviction of simple assault and battery in the Union County Court, Law Division.
A statement of the facts and history of the litigation concerning this matter is essential to a thorough understanding of its determination. The defendant and certain other co-defendants were indicted by the Union County grand jury in 1946, for assault and battery upon one Anthony Ajar, with intent to kill. The matter arises out of the personal injuries suffered by Ajar, a foreman at the Phelps Dodge Copper Products plant at Elizabeth, New Jersey, July 30, 1946, during violence which flared in a labor strike. In 1947, Frank Blusewicz, one of Narushef's co-defendants, made an unsuccessful attack upon the validity of another indictment returned against him. See State v. Blusewicz, 135 N.J.L. 591 (Sup. Ct. 1947). Subsequently, indictments returned against Wesley Mitchell and Charles Stewart were attacked on application for writ of certiorari to the former Supreme Court en banc, as test cases in behalf of all defendants, including the defendant, Theodore Narushef. The asserted basis of the attack was that the May and October, 1946, grand juries were illegally empanelled and selected. The Supreme Court allowed the writs of certiorari (see State v. Mitchell and Stewart, 136 N.J.L. 420 (Sup. Ct. 1948)), and proofs were taken. With the advent of the court system created by the 1947 Constitution, the Appellate Division of the Superior Court succeeded to the jurisdiction of the former Supreme Court and, after hearing arguments on the proofs, determined the matter adversely to the defendants. See State v. Mitchell and State v. Stewart, 2 N.J. Super. 15 (App. Div. 1949). Mitchell proceeded to trial without further appeal or effort to prove the alleged illegality of the selection of the grand juries in question.
On September 18, 1950, defendant's attorney acknowledged service of notice of trial set for October 2, 1950, and his appeal for adjournment was granted. A new notice of trial *487 for January 29, 1951, was served upon defendant's attorney on January 3, 1951. The defendant again moved for an adjournment of the trial. On January 24, 1951, the defendant served upon the prosecutor of the pleas of Union County a notice of motion to dismiss the indictment in question. This was the first occasion in the history of this particular case that an application was made to dismiss the indictment and to permit the taking of depositions to prove that the October term, 1946, grand jury was illegally empanelled and selected. The defendant's motions for postponement of the trial and to dismiss were denied by the trial court on January 29, 1951. On February 16, 1951, the defendant's application to the Appellate Division of the Superior Court for leave to appeal from the trial court's refusal to dismiss was denied.
The defendant argues two grounds for reversal of his conviction: (1) that the trial court's denial of his "motions to dismiss the indictment on grounds charging discrimination in the selection of the grand jury and to take depositions in support thereof" deprived defendant of rights guaranteed by the Constitutions of the United States and the State of New Jersey; and (2) that the verdict was against the weight of the evidence.

I
As we have previously commented, it is not seriously disputed that the indictment sub judice is one of a series returned by the Union County grand juries for the May and October terms, 1946, against several defendants for alleged criminal acts growing out of a labor strike at the Phelps Dodge Company plant. Two of these defendants, Charles Stewart and Wesley Mitchell, made untimely applications for writs of certiorari to review their indictments and the reviewing court held in State v. Stewart and State v. Mitchell, 2 N.J. Super. 15, 20 (App. Div. 1949):
"R.S. 2:189-7 provided for the allowance of a writ of certiorari to remove an indictment, at the instance of an indicted person `within three months after the entry of any plea.' Stewart did not move *488 for his writ until well over a year from the date of his plea and Mitchell did not move until over three months after his plea. No justification has been advanced for the delay. The public interest demands that unnecessary delays in bringing indictments to trial be eliminated and the three months statutory limitation as applied to the facts presented appears wholly reasonable. Cf. Red Oaks, Inc., v. Dorez, Inc., 117 N.J.L. 280 (Sup. Ct. 1936); Peckitt v. Board of Adjustment, 136 N.J.L. 405 (Sup. Ct. 1948). Under these circumstances the relief sought here by the defendants might well be denied and their writs dismissed without more."
Certainly, Narushef's failure to institute any previous proceedings for a review of the indictment entitles him to little or no consideration. Particularly is this so in view of the fact that in the Stewart and Mitchell test cases, several hundred witnesses were examined in an attempt to establish the illegal empanelling and selection of the grand jurors; and also, notwithstanding the adverse decision in the Stewart and Mitchell cases, Narushef took no steps whatever to make any further attack upon the selection of grand jurors until January 24, 1951. Narushef, in his application to dismiss the indictment and to take further proofs, did not submit any persuasive proof that such proposed further examination of witnesses would or could alter or affect the determination reached by the court in State v. Stewart, supra.
The allowance of a writ of certiorari to remove an indictment, as provided by R.S. 2:189-7, must be made by the indicted person "within three months after the entry of any plea." Rule 2:5-3 (b3) provides: "All motions predicated on defenses and objections made prior to trial, shall be made before the plea is entered, but the court may permit them to be made within a reasonable time thereafter." Here, Narushef made no application to dismiss the indictment or to take proofs with respect to the alleged illegality and discrimination in the selection of the grand jurors for a period of approximately four years intervening between the time of the filing of the indictment and the making of his motion to the trial court. We are convinced that the defendant has not justified this unwarranted delay. As was stated by Judge *489 Jacobs in State v. Stewart, 2 N.J. Super. 15 (App. Div. 1949), at p. 20:
"The public interest demands that unnecessary delays in bringing indictments to trial be eliminated and the three months statutory limitation as applied to the facts presented appears wholly reasonable Cf. Red Oaks, Inc., v. Dorez, Inc., 117 N.J.L. 280 (Sup. Ct. 1936); Peckitt v. Board of Adjustment, 136 N.J.L. 405 (Sup. Ct. 1948)."
Additionally, it has been uniformly held by the courts of this State that the allowance of a motion to dismiss an indictment is a matter of judicial discretion and should not be exercised unless it clearly appears on the face of the indictment that no valid conviction can be rendered thereon. The rule is well stated in State v. Davidson, 116 N.J.L. 325 (Sup. Ct. 1936), at p. 328:
"The rule is that the discretion to quash an indictment will not be exercised unless upon the clearest and plainest ground, * * * That principle of law which the Supreme Court has set up for its own guidance applies with quite as much force to the Sessions."
Cf. Parks v. State, 62 N.J.L. 664 (E. & A. 1899); State v. Hoffman, 71 N.J.L. 285, 286 (E. & A. 1904); State v. Riggs, 92 N.J.L. 575 (E. & A. 1919); State v. Shipley, 10 N.J. Super. 245, 250 (App. Div. 1950). The burden is upon the defendant to establish that the County Court exercised its discretionary power capriciously and arbitrarily. State v. Davidson, supra; In re Tremper, 126 N.J. Eq. 276, 279 (Ch. 1939); affirmed 129 N.J. Eq. 274 (E. & A. 1941). It is our considered opinion that there was no abuse of discretion by the County Court in its denial of the defendant's application to dismiss the indictment and that the motion therefor was properly denied because of its untimeliness.

II
With respect to defendant's contention that the verdict was against the weight of the evidence, we find ourselves in disagreement. The courts of this State have consistently *490 held that in order to set aside a jury verdict as being against the weight of the evidence, it must clearly appear that it is the result of mistake, passion, prejudice or partiality. State v. Cordasco, 2 N.J. 189, 204 (1949); State v. Donohue, 2 N.J. 381, 389 (1949); State v. Pierce, 4 N.J. 252, 268 (1950); State v. Martinek, 12 N.J. Super. 320, 325 (App. Div. 1951). Rule 1:2-19, effective at the time of the trial and conviction of the defendant, provides, inter alia, as follows:
"If it shall appear, after challenge interposed by the defendant in the appellate court, that the verdict was against the weight of the evidence, the judgment shall be reversed and a new trial ordered."
This rule was amended on June 7, 1951, and provides:
"A verdict of a jury shall not be set aside as against the weight of the evidence unless it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion."
Rule 1:2-19, as amended on June 7, 1951, does not, in our opinion, substantially change what has always been the controlling principle followed by our courts in determining whether a verdict is against the weight of the evidence. In State v. Monia, 132 N.J.L. 91 (1944), at p. 96, Mr. Justice Perskie, speaking for the Supreme Court, stated:
"Nor did the trial judge err in denying the motions for a directed acquittal. The State had established a case which required the submission thereof to the jury. Nor can we say that the verdict is against the weight of the evidence. For to set aside a verdict as against the weight of the evidence that fact must be so clear as to give rise to the inference that the verdict was the result of mistake, passion, prejudice, or partiality. State v. Treficanto, 106 N.J.L. 344, 350; 146 Atl. Rep. 313; State v. Lederman, 112 N.J.L. 366, 370; 170 Atl. Rep. 652; State v. Cox, 128 N.J.L. 108, 111, 112; 23 Atl. Rep. (2d) 555."
For the purpose of determining here whether the conviction of the defendant was against the weight of the evidence, we do not deem it necessary to discuss in detail the testimony *491 proffered by the State and the defendant. Our review of the record convinces us that the evidence was in sharp conflict. We think it may be fairly stated that there were certain inconsistencies and contradictions, as frequently occur at a trial, not only in the testimony of some of the witnesses for the State, but also in that of the defendant's witnesses. These inconsistencies and contradictions merely raise a question as to the probative value of the respective testimony and could not have warranted the court removing the case from the jury's consideration. State v. Plough, 88 N.J.L. 425, 426 (Sup. Ct. 1916); State v. Morehous, 97 N.J.L. 285, 296 (E. & A. 1922). In fact, the defendant concedes that there was sufficient testimony adduced by the State, standing alone, to have justified the court in submitting the case to the jury. But, the defendant contends, the weight of the evidence adduced by the defendant and his witnesses overcame the weight of the State's testimony and the judgment of conviction was, therefore, clearly against the weight of the evidence. We are convinced that there was sufficient competent evidence which, if believed by the jury, as it evidently was here, to support the verdict returned by the jury. Mr. Justice Heher, in the case of Hager v. Weber, 7 N.J. 201, 210 (1951), speaking of the province of a reviewing court, stated:
"The appellate tribunal cannot invade the constitutional office of the jury; it may not merely weigh the evidence where it is fairly susceptible to divergent inferences and substitute its own judgment for that of the jury. But, if the verdict be so far contrary to the weight of the evidence as to give rise to the inescapable conclusion of mistake, passion, prejudice, or partiality, it cannot serve to support the judgment, and appellate correction of the error is not an interference with the constitutional security of the inferior court or the attribute of finality on the facts inherent in its judgments or the constitutional right of trial by jury. As respects the appellate corrective process, there is no essential difference between a verdict that comes from misdirection and a verdict that constitutes a palpable perversion of the jury function. A verdict that rests upon testimony competent to sustain the inference implied in such a finding is ordinarily conclusive; e converso, it is not. Smith v. Lorillard Co., 67 N.J.L. 361 (Sup. Ct. 1902). The court may not set aside a verdict merely because, in its opinion, the jury upon the evidence *492 might well have found otherwise. Knickerbocker Ice Co. v. Anderson, 31 N.J.L. 333 (Sup. Ct. 1865). This conception of the weight of the evidence governs the trial court as well as the appellate court; and it applies to civil and criminal causes.", and cases cited therein.
See also State v. Lederman, 112 N.J.L. 366 (E. & A. 1934); State v. Monia, supra; State v. O'Donnell, 8 N.J. Super. 13 (App. Div. 1950). Similarly, here, we conclude that the verdict rests upon competent evidence and find that it was not "the result of mistake, passion, prejudice or partiality."
Affirmed.