277 N.J. Super. 601 (1994)
649 A.2d 1372
LORETTA E. SCOTT, PLAINTIFF,
v.
ROBERT R. SCOTT, JR., DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Passaic County.
Decided June 30, 1994.
*605 Edward V. Torack for plaintiff (Hook, Torack & Smith, attorneys).
Ruth W. Friedland for defendant.
McVEIGH, J.S.C.
This matter arises from the divorce of Loretta and Robert Scott. The Scotts were married in 1975, and three children were born of the marriage, the eldest being emancipated. Mrs. Scott filed her complaint for divorce on grounds of extreme cruelty in 1992. Her account of the marriage, as detailed in the complaint and as testified to at trial, was that of a relationship scarred by Mr. Scott's excessive use and abuse of alcohol and of her husband's mental problems.
The second count of Mrs. Scott's complaint for divorce alleges that on three occasions in 1991, Mr. Scott surreptitiously and without knowledge and consent of the plaintiff, recorded Mrs. Scott's telephone communications from within the marital home. It is further alleged that Mr. Scott himself connected mechanical eavesdropping devices to the phone which enabled him to make cassette tape recordings of telephone conversations in the home.
In New Jersey, the transgressions which Mr. Scott is accused of committing are covered by N.J.S.A. 2A:156A-1, the "New Jersey Wiretapping and Electronic Surveillance Control Act." N.J.S.A. 2A:156A-3 states in pertinent part: "Any person who: a. Purposely intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication ...; shall be guilty of a crime in the third *606 degree." The law also provides a civil remedy for persons seeking relief from violators.
N.J.S.A. 2A:156A-2 defines a "wire communication" to include communications made via telephone. The statute defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical, or other device."
A trial in this matter was held, at which time all issues were disposed of with the exception of the wiretap issue. Limited testimony was given by both parties with regard to the wiretapping allegations and counsel for both sides were instructed to submit briefs on the issue. It is this court's task to decide whether Mr. Scott is liable for violation of the New Jersey wiretap statute, and if he is found to have violated it, what penalty should be imposed on him.
N.J.S.A. 2A:156A-24 deals with the penalties which may be imposed on an individual found to have violated the wiretapping statute. The section states in pertinent part: "Any person whose wire, electronic or oral communication is intercepted ... and shall have a civil cause of action against any person who intercepts ... and shall be entitled to recover from any such person: a. Actual damages ... b. Punitive damages and c. A reasonable attorney's fee and other litigation costs reasonably incurred."
Mr. Scott, in brief submitted by his counsel, admits to tapping the phone in the marital home on three separate occasions. He did this while still residing in the home with his wife. In Mrs. Scott's brief, it is also stated that Mr. Scott tapped phones in the marital home three different times. The dates on which the tapping took place differ in each brief, but it is agreed by the parties that the phones were tapped on three occasions in 1991. After reviewing the briefs and various certifications submitted by the parties in support thereof, this court finds that Mr. Scott did tap the phones in the marital home on three separate instances in 1991.
*607 18 U.S.C. 2510 is the federal statute dealing with wiretapping, and it is, "... virtually identical in language to the New Jersey Statute." M.G. v. J.C., 254 N.J. Super. 470, 473, 603 A.2d 990 (Ch.Div. 1991). In the past, some federal courts have held that there exists a marital exemption which prevents liability under the federal statute. Simpson v. Simpson, 490 F.2d 803 (5th Cir.) cert. denied 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). The Simpson court was of the opinion that Congress, in drafting the statute, was concerned with combating organized crime and "to protect individuals against invasions of their privacy by sophisticated surveillance devices." Id. at 806. The court was apprehensive about applying the federal statute to the interspousal situation because to do so would override the interspousal immunity for personal torts accorded by the majority of states. Id. at 806. The court was able to rationalize its decision by finding that the legislative history behind the statute was inconclusive with regard to wiretapping in the marital setting. Id. at 807.
More recently, the rationale restricting interspousal liability under the federal wiretapping statute has come under fire from various state and federal courts. U.S. v. Jones, 542 F.2d 661 (6th Cir.1976); Kratz v. Kratz, 477 F. Supp. 463 (E.D.Pa. 1979); Pritchard v. Pritchard, 732 F.2d 372 (4th Cir.1984); Standiford v. Standiford, 89 Md. App. 326, 598 A.2d 495 (1991); People v. Otto, 2 Cal. 4th 1088, 9 Cal. Rptr.2d 596, 831 P.2d 1178 (1992). The Jones court held that the legislative history of the federal statute left no doubt that the law was intended to prohibit "... all wiretapping and electronic surveillance by persons other than authorized law enforcement officers engaged in the investigation or prevention of specified types of serious crimes, and only after authorization of a court order obtained after a showing and finding of probable cause." Jones, supra, 542 F.2d at 688. Furthermore, the court noted that in drafting the statute Congress was well aware that a major area of use for surveillance techniques was in the preparation of domestic relations cases. Id.
*608 The sole New Jersey case dealing with the issue of wiretapping in the marital setting, M.G. v. J.C., 254 N.J. Super. 470, 603 A.2d 990 (Ch.Div. 1991), followed the rationale of Jones and its progeny. The M.G. court stated: "it is clear that the language of the N.J. Wiretapping Act contains no explicit exemption for any wiretapping by an aggrieved spouse. It is not the function of the courts to graft an exemption where the legislature has not seen fit to provide one." Id. at 477, 603 A.2d 990.
Counsel for Mr. Scott argues that this court should follow the rationale propounded by the Simpson court and find that Mr. Scott did not violate the New Jersey wiretapping statute. Counsel states: "the crux of Simpson is `family status,' not spousal immunity, but immunity extended to all family members, who are living in the family home." Counsel for Mr. Scott cites Scheib v. Grant, 814 F. Supp. 736 (N.D.Ill. 1993) to stand for the premise that a family status exemption should apply in the instant case. This reasoning is faulty for several reasons.
First, Scheib can be distinguished from the instant case in that it deals with a father's use of an extension phone to record his son's phone conversations with his mother. The court held that such actions were not prohibited as they fell within the "extension phone exception" of the federal statute. This exception permits a parent to intercept a minor child's telephone conversations by use of an extension phone in the family home. Newcomb v. Ingle, 944 F.2d 1534 (10th Cir.1991), cert. denied, 502 U.S. 1044, 112 S.Ct. 903, 116 L.Ed.2d 804 (1992); Anonymous v. Anonymous, 558 F.2d 677 (2nd Cir.1977). Clearly the behavior of Mr. Scott is not analogous to the actions of the fathers in any of the aforementioned cases. It is undisputed that Mr. Scott utilized an eavesdropping device to record the phone conversations of his wife on three separate occasions.
Second, counsel's dichotomy between family status and marital status is unfounded. Current case law makes it crystal clear that the majority of courts have held that, in the absence of an explicit exemption for electronic surveillance by one spouse directed *609 against another, the federal statute reaches interspousal wiretapping. Scheib, supra, 814 F. Supp. at 738; Heggy v. Heggy, 944 F.2d 1537, 1538-41 (10th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992); Kempf v. Kempf, 868 F.2d 970, 973 (8th Cir.1989): Pritchard, 732 F.2d 372; Jones, supra, 542 F.2d 661; Heyman v. Heyman, 548 F. Supp. 1041, 1044-47 (N.D.Ill. 1982). The state of the law in New Jersey, as previously cited in M.G. v. J.C., dictates that the language of the New Jersey statute does not exempt wiretapping carried out by a spouse. M.G., supra, 254 N.J. Super. at 477, 603 A.2d 990.
Third, the Simpson court was concerned that to prohibit interspousal wiretapping under federal law would override the interspousal immunity for personal torts accorded by a majority of the states. Simpson, supra, 490 F.2d at 806. New Jersey, however, has abolished interspousal immunity for intentional torts, including wiretapping. Tevis v. Tevis, 79 N.J. 422, 400 A.2d 1189 (1979).
Lastly, counsel for Mr. Scott claims that prior to Mr. Scott's tapping of the phones in the marital home in 1991, Mr. and Mrs. Scott had jointly decided to tap the home phones in order to learn information about their teenage daughter Elaine. Counsel argues that because of this alleged prior tapping, to which Mrs. Scott was a party, Mrs. Scott had a diminished expectation of privacy, and therefore implicitly consented to the subsequent wiretapping. To support this premise, counsel for Mr. Scott cites N.J.S.A. 2A:156A-4d which excepts from the law a person who has given prior consent to the interception of phone communications, unless such a communication is used for the purpose of committing a criminal or tortious act in violation of the United States or New Jersey Constitutions. The federal statute has a parallel provision, providing an exception when a party has consented to prior tapping.
Mrs. Scott disputes that she ever conspired with Mr. Scott to intercept the phone conversations of Elaine. In any event, it is not necessary for this court to decide whether or not such prior tapping of Elaine's phone conversations took place because the *610 statutory section cited by counsel only applies to prior consent given for tapping by the party who is later claiming that her conversations were intercepted illegally. Therefore the exception is inapplicable here. In addition, even if this court were to find that parties had jointly tapped their daughter's phone, it does not follow that Mrs. Scott would have a diminished expectation of privacy which would give free license to Mr. Scott to tap the family phones. This court rejects the arguments of Mr. Scott's counsel and finds that Mr. Scott did violate the New Jersey wiretapping statute.
In Mr. Scott's brief, counsel argues (although she does not support her proposition with any statutory or case law or medical or psychological reports) that Mr. Scott did not violate the New Jersey wiretapping statute by "purposely" intercepting Mrs. Scott's phone conversations because he had a diminished capacity at the time due to his abuse of alcohol and prescription drugs and due to his poor mental state. It is undisputed by the parties that during the marriage, and at the time of the wiretapping, Mr. Scott was experiencing some mental problems and that he drank to excess. Whether Mr. Scott had a diminished capacity under the law, however, is an entirely different question which must be addressed.
N.J.S.A. 2C:2-2b defines what are known as "specific intent" and "general intent" crimes. Specific intent crimes require "purpose" or "knowledge" and general intent crimes are those which require "recklessness" or criminal "negligence." A person has acted purposefully "with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. N.J.S.A. 2C:2-2b(1). It is clear that wiretapping, as defined by the New Jersey statute, falls within the category of specific intent offenses, as the very language of the law prohibits persons from "purposely" intercepting any wire, electronic or oral communications.
Notwithstanding the general proposition that voluntary intoxication is not a permissible defense, early case law in this state *611 recognized that in some circumstances intoxication may be shown in order to show the absence of specific intent. The court, in Warner v. State, 56 N.J.L. 686, 29 A. 505 (E. and A. 1894), held that rather than being a defense, intoxication was a "condition of fact." Id. at 689, 29 A. 505. The court further reasoned:
The exceptional immunity extended to the drunkard is limited to those instances where the crime involves a specific, actual intent. When the degree of intoxication is such to render the person incapable of entertaining such intent, it is an effective defense. If it falls short of this it is worthless. Id. at 690, 29 A. 505.
N.J.S.A. 2C:2-8 concerns the use of the intoxication defense. It provides:
a. Except as provided in subsection d. of this section, intoxication of the actor is not a defense unless it negatives an element of the offense.
b. When recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he been sober, such unawareness is immaterial.
c. Intoxication does not, in itself, constitute mental disease ...
d. Intoxication which (1) is not self induced or (2) pathological is an affirmative defense if by reason of such intoxication the actor at the time of his conduct did not know the nature and quality of the act he was doing, or if he did know it, he did not know what he was doing was wrong. Intoxication under this subsection must be proved by clear and convincing evidence.
e. Definitions ...
(1) "Intoxication" means a disturbance on mental or physical capacities resulting from the introduction of substances into the body;
(2) "self-induced intoxication" means intoxication caused by substances which the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduced them pursuant to medical advice or under such circumstances as would afford a defense to a charge of crime;
(3) "Pathological intoxication" means intoxication grossly excessive in degree, given the amount of intoxicant, to which the actor does not know he is susceptible.
As noted in the commentary to the New Jersey Code of Criminal Justice, self-induced intoxication is not a defense unless it negatives an element to the offense. Code Commentary at 67-68. As construed in the commentary, the common law intoxication defense "could either exculpate or mitigate guilt `if the defendant's intoxication, in fact, prevents his having a mental state which is an element of the offense and if the law will recognize the proof of the lack of that mental state.'" Id. at 68. Therefore, the New Jersey Commission, which drafted this law, recognized that under pre-Code *612 law, intoxication was admissible as a defense to a "specific" intent, but not a "general" intent, crime. Id.
The Commission further reasoned that cases which refer to "specific intent" can be equated for purposes of the statute with that which the Code defines as "recklessness" or criminal "negligence." Id. Therefore, N.J.S.A. 2C:2-8a permits evidence of intoxication as a defense to crimes requiring either "purposeful" or "knowing" mental states, but it excludes evidence of intoxication to crimes requiring mental states of only recklessness or negligence. State v. Cameron, 104 N.J. 42, 514 A.2d 1302 (1986). In short, voluntary intoxication must negate the purposeful or knowing conduct of the crime. Id. at 53, 514 A.2d 1302.
As per the Model Penal Code, upon which the New Jersey statute is based, the policy reasons for requiring purpose or knowledge as a requisite element of some crimes "are that in the absence of those states of mind, the criminal conduct would not present a comparable danger, or the actor would not pose as significant a threat." MPC Commentaries, sec. 2.08 at 357-58. "Moreover, the ends of legal policy are better served by subjecting to graver sanctions those who consciously defy legal norms." Id.
In view of the fact that N.J.S.A. 2C:2-8a permits evidence of intoxication as a defense to crimes requiring "purposeful" or "knowing" mental states, it is clear that intoxication can be used as a defense to a charge of violating the New Jersey wiretapping statute. The fact that the intoxication defense may be employed, however, does not mean that it will be successful. The question remains, what level of intoxication is necessary in order for Mr. Scott to show that the purpose or knowledge of his acts were negated by his state?
The standard articulated in State v. Treicanto, 106 N.J.L. 344, 146 A. 313 (E. & A. 1929), and which still is the state of the law today, is that the "prostration of faculties such that defendant was rendered incapable of forming an intent" must be shown. The Treicanto court reasoned:

*613 You should carefully discriminate between the excitable condition of the mind produced by drink, which is not capable of forming intent, but determines to act on a slight provocation, and such prostration of the faculties by intoxication as puts the accused in such a state that he is incapable of forming an intention from which he shall act. Id. at 352, 146 A. 313.
Furthermore, Justice Pashman, concurring and dissenting in State v. Stascio, 78 N.J. 467, 396 A.2d 1129 (1979), wrote:
It is not the case that every defendant who has had a few drinks may successfully urge the defense. The mere intake of even large quantities of alcohol will not suffice. Moreover, the defense cannot be established solely by showing that defendant might not have committed the offense had he been sober. (citation omitted.) What is required is a showing of such a great prostration of the faculties that the requisite mental state was totally lacking. That is, to successfully invoke the defense, an accused must show that he was so intoxicated that he did not have the intent to commit an offense. Such a state of affairs will likely exist in very few cases. Id. at 495, 396 A.2d 1129.
N.J.S.A. 2C:2-8e(1) defines intoxication as, "a disturbance of mental or physical capacities resulting from the introduction of substances into the body." Therefore, in order for intoxication to negative an element of the offense, as statutorily required, the intoxication must be of an extremely high level. Keeping in mind the statutory definition of intoxication given by the Legislature, the standard which must be met by the defendant raising the intoxication defense is "prostration of faculties." Cameron, 104 N.J. at 54, 514 A.2d 1302. The Cameron Court attempted to delineate how this standard is met.
The Cameron Court enumerated several examples of cases in which intoxication was deemed sufficient and insufficient to warrant a jury charge. In every one of those cases in which evidence of intoxication was allowed or not allowed, the defendant articulated what was specifically consumed prior to commission of the acts. Id. at 55-56, 514 A.2d 1302. Taking into consideration these cases, the Court then set forth a list of factors pertinent to the determination of intoxication sufficient to satisfy the test of "prostration of faculties." They are as follows:
The quantity of intoxicant consumed, the period of time involved, the actor's conduct as perceived by others (what he said, how he said it, how he appeared, how he acted, how his coordination or lack thereof manifested itself), any odor of alcohol *614 or other intoxicating substance, the results of any test to determine blood-alcohol content, and the actor's ability to recall significant events. Id. at 56, 514 A.2d 1302.
While not all of the above factors are wholly applicable to the instant case, where Mr. Scott is accused of violating the New Jersey wiretapping statute, it is clear that Mr. Scott has offered nothing to show that he was intoxicated when he committed the acts. In all of the briefs, supplemental memoranda, and certifications submitted to this court, only scant reference is made to Mr. Scott's alcohol and drug dependency and mental problems. These references are not specific in nature and do not provide the quantum of evidence necessary to consider a defense of intoxication. In addition, no psychological or medical reports are offered to support the assertion that Mr. Scott did not have the requisite mental state.
Further, the court will for a moment assume for the sake of argument that Mr. Scott was so intoxicated at the times he was connecting the eavesdropping devices to the phone that his faculties were prostrated. The offenses committed by Mr. Scott, however, did not take place only at the time the devices were connected to the phones. Rather, in keeping with the statute, the act of wiretapping extended every day that the device was connected to the phone.
Therefore, even if Mr. Scott's faculties were prostrated when hooking up the devices, in order for a defense of intoxication to be successful, Mr. Scott would have to show that for every day the phones were bugged, he was so intoxicated that his mental state was totally lacking and that he did not have the intent to commit the offense. Mr. Scott would have to show that throughout the time the eavesdropping devices were connected to the phone he was in a prolonged and continuous state of intoxication. Mr. Scott has not proven that he was intoxicated at the times he connected the devices, and he certainly has not shown that he was so severely intoxicated for the time in which the devices were in operation that he did not understand the "purpose" of his acts.
*615 N.J.S.A. 2A:156A-4d dictates that any person who unlawfully intercepts communications in violation of the statute is subject to the civil liability established in section 24. Section 24, 2A:156A-24a provides the method for calculating compensatory damages. The statute states: "a. Actual damages, but not less than liquidated damages computed at the rate of $100.00 a day for each day of the violation, or $1,000.00, whichever is higher."
As stated previously, this court finds that Mr. Scott tapped the phones the marital home on three separate occasions in 1991. By the facts presented it is impossible to determine how many days the recording devices were in operation. It is possible that the devices were in operation for days or weeks before Mrs. Scott discovered them. It is also plausible that Mrs. Scott discovered the devices the same day they were installed by Mr. Scott. For this reason, this court is limited in awarding $3000.00 in compensatory damages to Mrs. Scott. This amount represents $1000.00 for each day that it is undisputably certain that the phones in the marital home were tapped.
As per N.J.S.A. 2A:156A-24, punitive damages may also be assessed against Mr. Scott. "Punitive damages should be awarded when the conduct of the wrongdoer is especially egregious." M.G. v. J.C., supra, 254 N.J. Super. at 479, 603 A.2d 990, citing Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 454, 375 A.2d 652 (1977). Furthermore, "to warrant the punitive damage award there must be an evil minded act accompanied by a willful and wanton disregard of the rights of others." Id. at 480, 375 A.2d 652, citing Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48, 477 A.2d 1224 (1984).
There is not a specific ratio between compensatory and punitive damages. "They are assessed from the prospective [sic] of the defendant rather than of the plaintiff." M.G. v. J.C., supra, 254 N.J. Super. at 480, 603 A.2d 990, citing Cappiello v. Ragen Indus., 192 N.J. Super. 523, 532, 471 A.2d 432 (App.Div. 1984).
*616 In rendering its opinion, the court in M.G. v. J.C., supra, held, "... in cases dealing with estranged spouses living under the same roof, the need for privacy is probably greater than under normal living conditions. A secretive taping of a spouse's calls under these conditions is an invasion in a most egregious fashion." Id., 254 N.J. Super. at 479, 603 A.2d 990.
Given the purposeful nature of Mr. Scott's acts, in willful and wanton disregard of the privacy interests of his wife, a punitive damage award in the amount of $4500.00 is hereby awarded to Mrs. Scott. As stated in Mrs. Scott's certifications, she suffered a great deal of grief and anxiety due to Mr. Scott's acts. This court is mindful that it could have penalized Mr. Scott to an even greater extent for his actions. The instant case, however, is not analogous to the situation in M.G. v. J.C., supra, where the acts of the defendant were even more egregious than those perpetrated in this case, since the defendant in M.G. v. J.C. disclosed the contents of the taped conversations to a third party resulting in irreparable harm to his wife. Id. at 480, 603 A.2d 990. This court also awards to Mrs. Scott $750.00 for counsel fees relating solely to this aspect of the case.
Judgment of divorce and property settlement agreement entered. Judgment in amount of $8250.00 for Mrs. Scott. Amount to be deducted from Mr. Scott's interest in the marital home at the time of sale.