737 A.2d 1170 (1999)
325 N.J. Super. 133
Donna A. CACCIARELLI, Plaintiff,
v.
Joseph F. BONIFACE, Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Passaic County.
Decided June 9, 1999.
John Fiorello, Wayne, for plaintiff (Feldman & Fiorello, attorneys).
Toni Belford Damiano, Little Falls, for defendant.
*1171 DIAMOND, J.S.C.
This is a post judgment application for change of custody in which two issues which do not appear to have been previously considered in this jurisdiction were presented. The first being whether or not the father as parent of primary responsibility of three minor children ages 4, 7, and 9 can on the theory of vicarious consent, audio tape record telephone conversations between the mother and the children when he is not a party to the conversation. The second issue deals with what action the Court can take for violation of a sequestration order in a civil family related trial when the best interests of the children are at stake. What follows is that portion of the Court's decision dealing with these two issues.

VICARIOUS CONSENT
The question presented to the Court is whether or not the Defendant-Father of three minor children at the then age of 4, 7, and 9 can tape record telephone conversations between the Plaintiff-Mother and the three children, when he is not a party to the conversation. The Defendant-Father is the parent of primary responsibility pursuant to the terms of the Judgment of Divorce. The children have been living with the Defendant since December of 1996.
Defendant attempted to offer several audio tapes of telephone conversations between the Plaintiff-Mother and the three children of the parties. It was his position that when the children got off the phone after speaking with their mother, they were very upset, agitated, would cry, and at times became unruly. Defendant believed that the Plaintiff may have been verbally abusing the children, threatening and/or intimidating them and he was overly concerned for their welfare. As a result, he began to tape record conversations between the mother and children.
Under the New Jersey Wire Taping and Electronics and Surveillance Act, N.J.S.A. 2A:156A-3 it provides:
That any person who
a) purposely intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication; or
b) purposely discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or
c) purposely uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication; shall be guilty of a crime of the third degree.
Furthermore, N.J.S.A. 2A:156A-21 provides that:
Any aggrieved person in any trial ... in or before any court ... may move to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on the grounds that ... the communication was unlawfully intercepted.
Additionally, our statute N.J.S.A. 2A:156A-4 provides exceptions to the wire taping statute and more particularly under Subsection D provides:
A person not acting under color of law to intercept the wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior to consent to such interception unless a communication is intercepted or used for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or this State for the purpose of *1172 committing any other injurious act. The fact that such person is the subscriber to a particular telephone does not constitute consent effective to authorize the interception of communications among parties not including such person on that telephone. Any person that when lawfully intercepts or uses such communication as provided in this paragraph shall be subject to the civil liabilities established in Section 24 of P.L. 1968, c. 409 (C. 2A:156A-24) in addition to any other criminal or civil liability imposed by law.
In this matter, Plaintiff immediately sought to suppress and prohibit the Defendant from use of these tapes inasmuch as the allegation was that they violated the New Jersey statute on the theory that the Defendant recorded conversations in which he was not a party. Plaintiff contends that this was done without her consent thereby violating N.J.S.A. 2A:156A-3 and pursuant to N.J.S.A. 2A:156A-21(a) the contents of the alleged illegal tape recordings made without the Plaintiff's knowledge or consent should therefor be suppressed.
Defendant on the other hand, claims that pursuant to the theory of vicarious consent which has not yet been adopted directly in New Jersey but is followed as a result of a federal wire taping statute by several cases throughout the United States should permit use of the tape recordings. The federal wire taping law known as Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.A. 2510-2520, 1982 and SUPP. IV 1986) has almost identical language to the New Jersey Wire Taping and Electronic Surveillance Act. Clearly the New Jersey Act was modeled after the federal statute and case law in New Jersey has found that our legislature intended when it enacted the state act to follow the federal statute cited. See State v. Fornino, 223 N.J.Super. 531, 544, 539 A.2d 301 (App.Div.1988).
While it is clear that a party can audio tape conversation in which he or she is part of the conversation without being violative of the New Jersey statute, the question now presented is whether or not one spouse can record a conversation between the children and the other spouse on the theory of potential verbal and/or mental abuse between the other spouse and the children. This being the theory of vicarious consent.
In the present case, at the time the tape recordings were made the children were 4, 7, and 9 years of age. The Court must determine whether or not the Defendant vicariously consented to the taping of the conversations on behalf of the children and whether or not it should be permitted under the existing family law cases in this State. As indicated, there are no civil cases directly on point and the only one to discuss the theory of vicarious consent is the criminal case of State v. Diaz, 308 N.J.Super. 504, 706 A.2d 264 (App.Div. 1998). In that case, the Court was dealing with a video tape containing audio of allegations of physical and verbal abuse of a nine month old child by the nanny, made with consent of both husband and wife. This was a criminal matter in which the nanny was charged with aggravated assault endangering the welfare of a child.
The trial court found that the video portion of the tape was not subject to the New Jersey statute but that the audio portion was. The Appellate Division determined that the entire tape both audio and video should be admitted on the theory of vicarious consent. The Appellate Division also noted that the New Jersey statute and the federal statute were virtually identical in this regard and though it was clear that it was limited to the fact pattern presented in that matter it did adopt the vicarious consent theory under the federal statute and New Jersey statute N.J.S.A. 2A:156A-4(d). The court said that the New Jersey statute incorporates the theory of vicarious consent under the circumstances presented and permitted the audio and video portions of the video tape recording. Diaz, supra, at 516, 706 A.2d 264,
*1173 The Diaz, supra, Court gave a thorough review of the federal and state cases dealing with the issue of vicarious consent under varied circumstances. In the case of Pollock v. Pollock, 154 F.3d 601, decided in 1998 by the U.S. Court of Appeals Sixth Circuit, the fact pattern was quite similar to that presently before the case at bar. There was a recording of the child's phone conversations with the other spouse motivated by concern for the child's best interest. That case also involved a bitter custody dispute as is presently before this Court.
In the Pollock, supra, case, the mother taped phone conversations between her 14 year old daughter and the daughter's father and step-mother. The mother did so because she was concerned that the father and step-mother were emotionally abusing her daughter. Although the teenage daughter stated that she believed her mother began recording the conversations when the mother discovered that she was being represented by her own attorney, the Court found that the mother was sincerely concerned for the daughter's wellbeing.
The Pollock, Court in rendering its decision at page 609 said:
We adopt the standard set forth by the District Court in Thompson [v. Dulaney] (838 F.Supp. 1535 Utah 1993) and hold that as long as the guardian has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the taping of telephone conversations, the guardian may vicariously consent on behalf of the child to the recording.
Continuing on page 610 the Court said:
There are situations such as verbal, emotional, or sexual abuse by the other parent, that makes such doctrine necessary to protect the child from harm. It is clear that this is especially true in the case of children who are very young.
The Pollock, supra, Court relied heavily on the decision of Thompson v. Dulaney, supra. In that case, the former wife taped her former husband talking to their five year old and three year old children on the telephone. Subsequently, the former husband sued the ex-wife. The Defendant-Wife raised the defense of vicarious consent. The Court held that vicarious consent provided an exception to "Title III liability" and that under 18 U.S.C. § 2511(2)(d) a parent or guardian could authorize the recording of his or her minor child's conversation. The Court said that as long as the guardian had a good faith basis that is objectively reasonable for believing that it is necessary to consent on behalf of the minor children to tape their conversations, vicarious consent would be permissible in order for the guardian to fulfill the statutory mandate to act in the best interests of the child. That Court also noted that it's holding was "clearly driven by the fact that this case involves two minor children whose relationship with their mother was allegedly being undermined by their father". Supra, at 1544.
In the present case, the allegations by the Defendant are exactly that, the Plaintiff-Mother undermining the Defendant-Father and attempting to win over the children so that they would prefer to live with her rather than their father in this very emotionally contested custody hearing.
While the Pollock, supra, Court adopted the Thompson, supra, standard, it added that a parent cannot record a child's conversation with the other party by "simply invoking the magic words, "I was doing it in his/her best interest", supra at page 610. However, the Pollock, supra, Court did note that "there are situations such as verbal, emotional, or sexual abuse by the other parent that makes such a doctrine necessary to protect the child from harm. It is clear that this is especially true in the case of children who are very young".
There are other cases that have also adopted the same findings of both of these *1174 decisions. For example, in the Alabama Court case of Silas v. Silas, 680 So.2d 368 (Ala.Civ.App.1996), it was determined that a parent may give vicarious consent on behalf of the children to the taping of phone conversations where the parent has a good faith basis to believe that the minor child is being abused, threatened, or intimidated by the other parent. Furthermore, in the case of Campbell v. Price, 2 F.Supp.2d 1186 (1998) a decision from the District Court in Arkansas, a father had custody of his 12 year old daughter and taped conversations between the child and the mother. The father claimed that he did so because he was concerned that the mother was emotionally abusing the daughter. The father noticed that the daughter would cry and become upset after speaking with her mother on the phone. The Court found vicarious consent on behalf of the father stating that a parent has the duty to protect his child.
In reviewing the case law throughout the country, there appears to be only one case that has expressly rejected the proposition of vicarious consent. That being the case of Williams v. Williams, 229 Mich. App. 318, 581 N.W.2d 777 (1998). There the Defendant-Father had sole custody of the child and taped phone conversation between his son and his ex-wife, arguing that he had vicariously consented on the child's behalf. Although in that case the facts were similar to the Pollock, supra, fact pattern, the Michigan Court would not accept the proposition of vicarious consent. The Court, however, took the position that:
This court has no authority to judicially create an exception for the tape recordings made by a custodial parent with a child's vicarious consent because we may not speculate with regard to the probable intent of the legislature beyond the words in the statute. Supra, at page 780.
In the case at bar at the time the application was made by Plaintiff's attorney to suppress the admission of these audio tapes, the Court reserved its decision pending the opportunity to review the statutory and case law. In the interim, and in the interest of not interfering with the trial which at that point had been in its seventh day, the Court permitted the defense counsel to play the tapes with the full understanding that the Court had reserved decision as to whether or not to accept the issue of vicarious consent. The Court felt there would be no prejudice inasmuch as if the decision was made not to accept the vicarious consent theory, then the contents of the audio tapes and anything that stemmed therefrom would be disregarded by the Court in its ultimate decision. On the other hand, if the Court felt that vicarious consent was proper and the tapes should be admitted, then the contents would be taken into consideration.
By virtue of testimony that had been elicited prior to the application to admit these tapes, there was serious question being raised as to whether or not the Plaintiff-Mother was attempting to undermine and/or verbally abuse the children. It is clear that from the facts presented the children would not have fully understood what was happening if their conversations were to be taped. We are further dealing with the issue as to what is in the best interests of the children. The Defendant alleged that he was very much concerned about their welfare based on their actions and reactions each morning after speaking to their mother on the phone. Defendant felt that he had to find out what Plaintiff was saying to the children and asks that on the theory of vicarious consent the audio tapes be admissible.
A review of the tapes in question revealed the Plaintiff made the following comments to the children:
A. Daddy said he is going to put mommy in jail if I don't pay him money.
B. You are not going to see me for awhile, when asked for how long, Plaintiff says for at least two years, because I will have to work on weekends to get the money to pay daddy.
*1175 C. If you don't come live with me I will probably have to sell my house.
D. If you don't come live with me I will have to get rid of the dog and the child is heard screaming no, no, no.
E. Daddy is not thinking about you but I am. I got a new job and a new house.
F. If you don't come to me on Friday before Halloween I won't make your costumes.
G. Children heard crying and telling their mother that everything will be okay, don't cry mommy. Children also heard to say don't worry mommy, they'll tell the Judge and everything will be okay.
In the case of M.G. v. J.C., 254 N.J.Super. 470, 603 A.2d 990 (Chan.Div.1991), the husband had taped conversations between the wife and her paramour and then went on to disclose the content of the conversation to third parties. The Court found that the husband had violated N.J.S.A. 2A:156A-3 and distinguished further the facts in that case from the federal cases dealing with wire taping telephone conversations between spouses. That case relied heavily on the case of Simpson v. Simpson, 490 F.2d 803 (Fifth Circuit 1974) Cert. Den. 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). In referring to the Simpson, supra, decision the M.G., supra, the Court: "reasoned that there was no convincing distinction between a household member picking up an extension phone or taping that same conversation". Supra, at page 474, 603 A.2d 990. Defendant here contends that as set forth in the Simpson, supra, case and other cases referred to, that the legislature never intended the wire taping act to apply to family conversations and therefore Defendant's conduct was no different than listening in on an extension phone which is clearly legal.
In the case of Scott v. Scott, 277 N.J.Super. 601, 649 A.2d 1372 (Chan.Div. 1994), the wife alleged that her husband had violated the New Jersey statute by taping the home telephone line and intercepting her telephone conversations. The Court found that the wife did not consent to having her phone conversations taped and distinguished the facts from the Simpson, supra, and other cases cited. Judge McVeigh in the Scott, supra, decision distinguishing it from the case of Scheib v. Grant, 22 F.3d 149 (7th Cir.1994) said that it: "Can be distinguished from the instant case (Scott) in that it deals with a father's use of an extension phone to record his son's phone conversations with his mother. The Court held that such actions were not prohibited as they fell within the extension phone exception of the federal statute. This exception permits a parent to intercept a minor child's telephone conversations by use of extension phone in the family home". Scott, supra, at page 608, 649 A.2d 1372.
Defendant contends that his actions were identical to that in the Scheib, supra, decision and therefore would be permitted by the "extension phone exception" to the federal statute.
Plaintiff on the other hand, refers to the M.G., supra, decision indicating that there were no reported cases in New Jersey pertaining to intraspousal wire taping. She further claims that the Court looked at federal case law and decided to reject a line of cases that holds intraspousal taping nonviolative of the wire taping statutes. Plaintiff contends that the Defendant surreptitiously tape recorded the Plaintiff's telephone conversations with the children and therefore this Court should find that such actions violate the New Jersey wire taping statute.
The admissibility at the time of trial of sound recordings containing competent relevant matter is generally dependent upon a preliminary determination that the speakers can be identified and (1) the recording device was capable of taping the conversation or statement, (2) its operator was competent, (3) the recording is authentic and correct, and (4) no changes, additions or deletions have been made in the recording. State v. Driver, 38 N.J. *1176 255, 287-88, 183 A.2d 655 (1962). See under New Jersey Evidence Rule 104 comment 2. The Court finds that the criteria set forth in Driver, supra, have been met.
In this matter, the Defendant upon listening to the taped conversation and hearing the volatile content of his former wife's comments, should have made immediate application to the Court to restrain her from continuing these phone calls. By failing to do so, he perpetuated the actions of his former spouse and let these comments continue for several months.
Had he determined that the conversations were harmless there would have been no need to seek restraints from the Court. By failing to do so in this matter only compounded the problem which Defendant claimed caused him to tape the conversations to begin with.
Taking all of the above into consideration and in light of the facts set forth in this matter, it is clear to the Court that the tapes in question should be admissible on the theory of vicarious consent being given by the Defendant on behalf of the children. It is further justified by the content of the tapes after having been heard in open court which fully substantiates the concern of the Defendant that he was being undermined by the Plaintiff who he felt was playing with the minds of the children.

SEQUESTRATION ISSUE
At the beginning of the trial, the attorney for the Plaintiff made application for a sequestration of the witnesses which was unopposed by the attorney for the Defendant. Defendant had three witnesses present at that time, his mother, father, and sister. They were excused from the Court Room and remained in the waiting area throughout the trial. The Plaintiff presented her case over a period of seven trial days.
From either the second or third trial day, there was a woman observer in the Court Room watching the trial on a daily basis. It wasn't until the eighth day of trial that the Court learned that this was the sister-in-law of the Defendant. That day, after the Plaintiff rested, and the Defendant called as his first witness his sister, Plaintiff's attorney objected claiming that there had been a violation of the sequestration order. He alleged that the sister-in-law of the Defendant while sitting in Court on a daily basis was taking notes and then leaving the Court Room either during the course of trial on breaks and/or after Court hours and speaking with the sequestered witnesses about what testimony had been offered. The claim was then made that this clearly violated the sequestration order inasmuch as the sequestered witnesses would now have the benefit of knowing what testimony was offered specifically by the Plaintiff as well as by the other witnesses called to the detriment of the Plaintiff and would eliminate their objectivity when and if they were to testify.
Defense counsel objected, claiming that there was no knowledge that this was taking place. However, defense counsel did admit that on or about the third or fourth day of trial she did hear Plaintiff's counsel's associate advise him that the sister-in-law was taking notes in the Court Room. Defense counsel, however, took no action at that time nor was any attempt made to have the sister-in-law cease and desist from taking any further notes or discussing the testimony with the sequestered witnesses.
The Court then questioned the sister-in-law under oath as to what action, if any, she had taken, and she admitted that she was taking notes and discussing the content of the testimony with the sequestered witnesses of not only of the Plaintiff but the other witnesses. Each of the sequestered witnesses was brought into Court one at a time, placed under oath, and questioned about what information they had been given. They each acknowledged that they were told in a generalities about the testimony offered.
The Court was then faced with making the determination as to what action to take *1177 by virtue of the violation of the sequestration order on behalf of the Defendant and his witnesses.
Rules of Evidence, Rule 615 deals with sequestration of witnesses and provides that:
At the request of a party, or on the court's own motion, the court may, in accordance with law, enter an order sequestering of witnesses.
The Appellate Division in 1997 in the criminal case of State v. Miller, 299 N.J.Super. 387, 399, 691 A.2d 377 in discussing sequestration of witnesses said:
The reason for sequestration is to prevent prospective witnesses from hearing what the other witnesses detail in their evidence, `for the less a witness hears of another's testimony the more likely is he to declare his own knowledge simply and unbiased.' State v. DiModica, 40 N.J. 404, 413, 192 A.2d 825. `Sequestration is discretionary with the trial court.'
After reviewing case law in the State, it is clear that there is no decision to date setting forth specifically what the action of the Court should be when there is a violation of sequestration in a civil/family matter. This issue was, however, briefly addressed in the case of In Re General Election, 255 N.J.Super. 690, 605 A.2d 1164 (1992). In that case, Judge Villanueva said:
Sequestration is designed to exercise a restraint on witnesses `tailoring' their testimony to that of earlier witnesses. It aides in detecting testimony that is less than candid and prevents improper attempts to influence the testimony in light of that already given. Geders v. U.S., 425 U.S. 80, 87, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976).
The separation and exclusion of witnesses is fundamental to the concept of a fair and impartial trial. The process has long been recognized as an important method for discovering truth and detecting the exposing falsehood. Use of this rule has been recorded in the scriptures and can be traced as a trial tactic throughout the development of modern law. 6 Wigmore, Evidence (Chadbourn Rev., 1976) Sec. 1837, P. 455, et seq.
It is clear in reviewing the Rules of Evidence and Court Rules that while New Jersey has an abundance of case law dealing with the sequestration of witnesses in criminal matters there are no cases dealing with how to treat a sequestration situation in a civil matter. Judge Villanueva did indicate in the case of In Re General Election, supra, at page 735, 605 A.2d 1164 that:
The rule of sequestration articulated in criminal cases apply as equally in a civil case.
While the cases in New Jersey deal specifically with the potential damage to a violation of sequestration in criminal matters, the fact that there is a violation of such order in a civil case should not let the violating party have any unfair advantage. The mere fact that it is a civil litigation should not make any difference so as to prejudice the rights of the non-violating party.
Our Appellate Division in the case of State v. Tillman, 122 N.J.Super. 137, 299 A.2d 419 (1973), said at page 143, 299 A.2d 419:
Inasmuch as there appears to be no established method for handling situations of this kind, the following procedure is suggested: In any case when a violation of a sequestration order has been brought to the attention of the trial judge, he should promptly conduct a voir dire out of the presence of the jury in order to ascertain the nature and extent of such violation. He should thereupon determine what remedial actions required, if any, in light of all the circumstances. In the extraordinary case `where it appears that there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated' (and consequently prejudice *1178 cannot be dissipated by other remedial action), the court may grant a mistrial. (Citation omitted).
Under extraordinary circumstances also,...., consideration may be given to the alternative possibility of excluding the testimony of the offending witness. A caveat must be entered here as to the appropriateness of this remedy in a criminal case as affecting the defendant's constitutional right to a fair trial.
Continuing on page 144, 299 A.2d 419, the Appellate Division said:
Where it does not clearly appear that a violation of the sequestration order possesses a potential for prejudice, a less drastic remedy appears to be proper. The court may in its discretion, also call the disobedience of the order to the attention of the jury as bearing on the credibility of the witnesses involved. Other jurisdictions have held or recognized that this a fair and sensible rule. In such case the parties may interrogate the witnesses as to what occurred and may comment thereon in their summations.
In 1996 the Appellate Division in the case of State v. Dayton, 292 N.J.Super. 76, at page 89, 678 A.2d 299 the Court followed the procedure recommended in the Tillman, supra, case and said:
There is no automatic exclusionary rule based on a witness' inadvertent violation of a sequestration order by sitting in the court room. (Citations omitted). In Tillman, supra, we granted a defendant a new trial because the prosecutor met with two witnesses together after the sequestration order was entered, there was a clear violation of the sequestration order and fault on the part of the state, and the trial judge took no remedial action `to mitigate the prejudicial affect of the violation of the sequestration order.'
Furthermore, the Court said that if there is a violation of a sequestration order, the trial judge: "Should promptly conduct a voir dire out of the presence of the jury in order to ascertain the nature and extent of the violation... and thereupon determine what remedial action is required, if any, in light of all the circumstances." Supra, at page 89, 678 A.2d 299.
As indicated, these cases deal with criminal matters in which the civil rights and/or constitutional rights of a defendant may be at stake. Clearly, we do not have the same situation in a post judgment trial dealing with a change of custody.
In the present matter the Court is faced with the issue of what is to be done in the best interests of the children. The Court has no doubt in its mind that were this a question of a civil claim by one party against the other, for example on a contract or other civil related type action, the Court in its discretion could preclude the sequestered witnesses from testifying because of a direct clear violation of the sequestration order. However, the Court here is dealing with a very sensitive Family Court issue involving custody of the children and, of course, what would be in their best interests. That must be the overriding consideration to be given by the Court in determining whether or not the sequestered witnesses should be permitted to testify.
If it were to turn out that their testimony was to be excluded, and what they were to offer would have had a direct impact on the ultimate decision to be made by the Court, there could be severe prejudice and potential damaging affect on that ultimate decision. On the other hand, the Court could consider letting the sequestered witnesses testify under certain constraints, conditions, or guidelines again considering the best interest issue.
The question then becomes does the trial court in a family matter in determining the issue of custody take the drastic action by precluding witnesses from testifying as would be permitted under the Rules of Evidence in a criminal matter or should the Court be more concerned with the sensitive issue at hand it in determining *1179 with which parent the children should reside.
In this matter the Defendant while present in the Court Room during trial could testify on his own behalf and the other witnesses may be merely cumulative or repetitive. Defendant heard all the testimony and certainly could testify without being in violation of the sequestration order.
Nevertheless, the Court ruled that the Defendant shall testify first, and when his testimony was completed, defense counsel was permitted to present a proffer of proof as to each one of the sequestered witnesses' testimony. If the Court found at that time that the testimony was going to be cumulative or repetitive the Court would rule as to whether or not to permit the witness to testify. The Court would then make its own determination as to credibility of each of the sequestered witnesses. Plaintiff's counsel would, of course, have the opportunity to explore any possible prejudice, bias, etc., by the witness if permitted to testify as set forth in the procedures enumerated in the Tillman, supra, decision.
The Court therefore after taking all of this into consideration finds that while there has been a direct violation of the sequestration order albeit perhaps not intentionally, it would be error to take the extraordinary step provided for both in the Rules of Evidence and in the existing case law to exclude the sequestered witnesses from testifying in this matter. It should also be noted that this Court is not happy with what happened and, in fact, finds that the action taken by the member of the Defendant's family was totally improper and uncalled for.
It is the decision of the Court, therefore, that the Defendant's three sequestered witnesses should be permitted to testify. The Plaintiff's attorney shall be given full opportunity to explore possible bias, prejudice, etc. The Court will then have the opportunity to determine the credibility of each witness and to give their testimony such weight as it may deserve.