**Dauph KLINE and Terry Kline, Plaintiffs,**

v.

**SECURITY GUARDS, INC. and Dana Corporation, Defendants.**

Civ.A. No. 00–CV–566.

United States District Court,
E.D. Pennsylvania.

Aug. 29, 2001.

Joseph F. Roda, Eric L. Keepers, Lancaster, PA, Simon Grill, Reading, PA, for plaintiffs.

Joshua Horn, Scott L. Vernick, Philadelphia, PA, for Security Guards, Inc.

Scott F. Cooper, Scott A. Mayer, Christine L. Viglioti, Philadelphia, PA, for Dana Corporation.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiffs Dauph and Terry Kline ("Plaintiffs") bring this case against Security Guards, Inc. and Dana Corporation ("Defendants"). Plaintiffs allege violations of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("Wiretap Act" or "the Act"), 18 Pa.Cons.Stat.Ann. § 5725(a), violations of privacy and reckless or negligent supervision, each arising from Defendants' alleged electronic surveillance of oral communications by individuals at Dana Corporation over a three-month period. Currently before the court is the limited, purely legal question of which is the appropriate standard for assigning civil liability under the Wiretap Act.

Plaintiffs contend that the Act provides for strict civil liability, "notwithstanding the 'intent' requirement of its federal counterpart, § 2520 of Title III" of the Federal Omnibus Crime Control and Safe Streets Act of 1968, Public Law 90–351, 82 Stat. 211 ("Title III"). Defendants argue that under the Act, as under Title III, Plaintiffs must show intentional violations in order to assert a prima facie civil case. In other words, Defendants state that in order to recover damages, Plaintiffs must establish that Defendants intentionally engaged in each unlawful act, while Plaintiffs assert that Defendants' actions in and of themselves engender civil liability.

■ We now hold that strict civil liability under the Wiretap Act only accrues after a violation of the Act is established—which requires a showing that a breach was intentional on the part of Defendants. Though in Pennsylvania civil damages can be claimed against Defendants under the Wiretap Act without finding Defendants criminally liable, the latter does not suggest a different required *mens rea.* Rather, establishing civil liability without criminal liability under the Wiretap Act depends upon the reduced evidentiary requirement for civil liability versus criminal liability—namely, to recover damages, a Plaintiff must prevail by a preponderance of the evidence rather than beyond a reasonable doubt.

## I. BACKGROUND

Plaintiffs seek damages from Dana Corporation ("Dana") and Security Guards, Inc. ("SGI"), claiming that Defendants unlawfully intercepted oral communications over a three-month period via electronic surveillance, in violation of the Wiretap Act. The oral communications allegedly intercepted were those of employees and others using the employee entrance to the Heavy Truck Division at Dana during the period in question. The facts of the case are largely immaterial at this point since only the legal standard for evaluating the facts is presently at issue. At a July 2001 conference with Magistrate Judge Arnold Rapoport discussing summary judgment motions, the parties agreed first to file limited motions as to the issue of whether intent is a required element of establishing civil liability under § 5725 of the Wiretap Act, entitled "Civil action for unlawful interception, disclosure or use of wire, electronic or oral communication." Because this decision concerns only the limited question of law at hand, we consider Plaintiffs' and Defendants' factual submissions accompanying the instant motions largely irrelevant.

We have before us Defendant Dana Corporation's Motion for Partial Summary Judgment as to the Required Level of Intent Under the Pennsylvania Wiretap Act, filed on July 23, 2001 ("Def. Dana's Mot."), Security Guards, Inc. Motion for Partial Summary Judgment, filed on July 23, 2001 ("Def. SGI's Mot."), Plaintiffs' Opposition to Defendants' Motions for Partial Summary Judgment, filed on August 9, 2001 ("Pls.' Opp."), Defendant Dana Corporation's Motion For Leave to File a Reply Brief in Further Support of Dana's Motion for Partial Summary Judgment as to the Intent Requirement Under the Pennsylvania Wiretap Act, Motion to Suppress Portions of Plaintiffs' Opposition Or in the Alternative for Leave to File a Counter-Statement of Facts and Request for Oral Argument, filed on August 23, 2001 ("Dana's 2d Mot."), Motion of Defendant Security Guards, Inc. For Leave to File a Reply Brief and to Strike Portions of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions for Partial Summary Judgment, filed on August 23, 2001 ("SGI's 2d Mot."), and Unopposed Motion to Convert Previously Filed Motions for Partial Summary Judgment to Motions for a Pretrial Ruling Under Local Rule of Civil Procedure 16.1, filed on August 23, 2001 ("Unopposed Mot.").

## II. DISCUSSION

### A. Request for a Pretrial Ruling

In their motions, Defendants initially requested "Partial Summary Judgment" as to the required level of intent for finding civil liability under the Wiretap Act—namely, that civil liability requires finding that Defendants' actions were intentional. In their opposition, Plaintiffs stated that Defendants' motions were not actually motions for summary judgment, but motions in limine as to the applicable standard under § 5725 of the Act.

Subsequently, Dana filed an unopposed motion, i.e. in consultation with the other parties, requesting a pretrial ruling under Local Rule of Civil Procedure 16.1. Unopp. Mot. at 2. Local Rule 16.1 provides for pretrial discovery motions and protective orders, but does not directly concern a pretrial decision on a legal question such as that before this Court presently.

Because the parties agree that no factual issues are being resolved, we believe it is unimportant whether our decision is considered a "summary judgment," a decision "in limine," or a motion under Local Rule 16.1. This decision is more in the nature of a non-appealable pretrial ruling and this Court has the authority to resolve applicable legal standards before considering evidentiary matters. Local Rule 17.1.1 provides that this Court may, with the parties' consent, "adapt to the needs of the case pretrial techniques aimed at simplifying the issues and reducing trial time."

## B. Statement of Jurisdiction

This case comes before the court as a question of federal law because the parties' labor dispute is governed by union contracts under the National Labor Relations Act (NLRA) (29 U.S.C.S. § 151 et seq.). However, it is uncontested that the limited question now before the court concerns a Pennsylvania state statute, the Wiretap Act, and that state law should therefore control our determination.

▮ We apply state law as enunciated by the Pennsylvania Supreme Court as though the case were before our Court under diversity jurisdiction and governed by the *Erie* Doctrine, which holds that state law as announced by the highest court of the State is to be followed by federal courts where the underlying question is one of state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). For the applicability of the *Erie* Doctrine to federal question cases considering state law issues, *see Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967) ("This is not a diversity case but the same principle may be applied for the same reasons, *viz.*, the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law.") *See also In the Matter of Royal Electrotype Corp.*, 485 F.2d 394, 395–396 (3rd Cir.1973) (citing *Bosch* in situation where state case law controlled case in federal court based on subject matter jurisdiction); *Ettinger v. Central Penn Nat'l Bank*, 634 F.2d 120, 124 (3rd Cir.1980) ("Although this case arises out of federal subject matter jurisdiction . . . . the rights and liabilities at issue were created by Pennsylvania law. [Citations.] [T]he construction of relevant Pennsylvania statutes by Pennsylvania courts controls.")

▮ Where a matter is unsettled by the Pennsylvania Supreme Court, we must apply what we find to be the law after considering all available data, including lower state court decisions. *Bosch, supra* at 465, 87 S.Ct. at 1783; *Royal Electrotype, supra* at 396; *Winterberg v. Transportation Ins. Co.*, 72 F.3d 318, 321–22 (3d Cir.1995). *See also Scranton Dunlop, Inc. v. St. Paul Fire & Marine Ins. Co.*, 2000 WL 1100779, at *1 (E.D.Pa. Aug.4, 2000) ("Since this is a matter of state law that has not been decided by the Pennsylvania Supreme Court, a prediction must be made as to how that court would rule if confronted with the same facts.").

## C. Strict Liability

No Pennsylvania cases have directly and substantially addressed the applicable level of culpability required for civil liability under the Wiretap Act. One phrase mentioning "strict liability" is at the cen-

ter of the dispute between the parties on the standard of liability. The Pennsylvania Supreme Court, in *Boettger v. Loverro*, 526 Pa. 510, 520, 587 A.2d 712, 717 (1991) (*Boettger II*), mentions without elaboration, "Unauthorized interception of wire or oral communications or improper disclosure of the contents of interceptions are felonies of the third degree. *Strict liability in a civil action for unlawful interception, disclosure or use is provided.*" (Emphasis supplied.) Defendant Dana acknowledges based on this decision that strict civil liability accrues for unlawful conduct, but contends that for conduct to be unlawful under the Wiretap Act, it must be intentional. Def. Dana Mot. at 23. Defendant SGI argues that the strict liability statement was merely *in dicta*. Def. SGI's Mot. at 16. We believe both defendants are correct and note that the *Boettger* case turned on the primary issue of good faith reliance on a court order. We also believe that what the Court was saying was that strict liability would follow a criminal conviction, or civil proof of an intentional violation of the Act.

Section 5725 provides in part (a),

Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person.

Plaintiffs argue that although § 5725 of the Act does not say "intentional," an earlier section of the Wiretap Act (§ 5703) does require *mens rea* and use the word "intentional." Section 5703, as amended, criminalizes one who

(1) *intentionally* intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;

(2) *intentionally* discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or

(3) *intentionally* uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication. (Emphasis supplied.)

Plaintiffs observe that Pennsylvania has amended the Wiretap Act nine times, and despite "ample opportunity to add an 'intent' requirement to § 5725," the State has "repeatedly chosen not to do so." *Id.* at 24. Therefore, Plaintiffs infer, no intent is required, and strict liability applies.

We believe the Plaintiffs read too much into the State's omission. While it is true that Pennsylvania has never added an " 'intent' requirement" to the text of § 5725, the State has also never added a clause mentioning strict liability. Thus, in order for strict liability to apply, the standard would have to be a default standard, or be the standard enumerated in another section of the Wiretap Act, meant to apply to § 5725 regarding civil liability.

The United States Supreme Court has repeatedly emphasized that where a statute's language is plain, " 'the sole function of the courts is to enforce it according to its terms.' " *See, e.g., United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citations omitted). *See also Williams v. Empire Funding Corp.,* 109 F.Supp.2d 352, 362 (E.D.Pa.,2000) ("In in-

terpreting a statute, the court must begin by examining the plain meaning of the statutory language."); *Com. v. Comly*, 2001 WL 747317, *2, 779 A.2d 618 (Pa. Cmwlth.2001) (" 'In Pennsylvania, it is well settled that a court must construe the words of a statute according to their plain meaning.' ") citing 1 Pa.C.S. § 1903(a).

Pennsylvania law provides for strict liability in few areas, and those areas are already clearly enumerated, with corresponding policy reasons for enforcing the highest standard of liability. For example, Pennsylvania law, following the Restatement (Second) of Torts, § 402A, and the Uniform Commercial Code, provides for strict liability against sellers of defective products. 13 Pa.C.S.A. § 2314. The policy reasons for strict product liability are clear: sellers may be the only parties in the marketing chain available to plaintiffs; strict liability imposes an incentive to safety; the seller is in a far better position than the consumer to prevent the circulation of defective products; and sellers can distribute the cost of compensating victims among all their customers as a normal business cost. *See*, e.g., *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 368–269, 372 A.2d 736, 739 (1977). Thus, a defective product's seller is liable even if he has exercised all possible care. *Id.* at 365, 372 A.2d at 738.

 On the other hand, we believe strict liability under the Wiretap Act would lead to untenable conclusions. Unlike defective products, wiretaps are not only legal, but necessary under certain circumstances. For example, the statute acknowledges that law enforcement, common communication carriers (e.g. phone companies) and even telemarketers use technology tantamount to wiretaps in the ordinary course of their business and duties. *See*, e.g., 18 Pa.C.S.A. § 5704. Without a doubt, privacy must be protected. But if the statute created strict civil liability by default, without any unlawful intent, law enforcement, common communication carriers and many others would be subjected to a slough of litigation for every mistake or accident under the act. Pennsylvania "does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S.A. § 1922(1). Strict liability without a prior finding of unlawful intent would create just such a result.

Though § 5725 does not mention intent, it does say that wiretaps "in violation of this chapter" give rise to civil liability. "This chapter" (i.e., Chapter 57) in § 5703 makes unlawful "intentionally" intercepting, disclosing interceptions, *inter alia.* Plaintiffs argue, " 'This chapter' means all sections of [the Wiretap Act], Chapter 57 of 18 Pa.C.S.A., and not merely ... § 5703." Pls.' Opp. at 12. Plaintiffs thus hint that other portions of the Act might allow for strict liability. What Plaintiffs fail to elucidate and what we cannot find, however, is where "this chapter" creates strict liability. In the absence of a different *mens rea* provided elsewhere, logic dictates that the legal standard provided in § 5703 and § 5705—that the enumerated acts must be intentional to be unlawful—governs the entire statute.

### D. Legislative Intent

As the Pennsylvania Supreme Court did in *Boettger*, both parties have reviewed the legislative history of the Wiretap Act for discussions of the standard of culpability required for civil liability. The Amended Bill's sponsor, Representative Scirica, dealt with this issue in his 1978 discussion of the authors' decision to allow for civil suits to be instituted under the Act. Explaining the removal of a "good faith" defense from the Act, Mr. Scirica stated:

What we are taking out in the section that you are referring to is a provision that says: "A good faith reliance on a

court order authorizing the interception shall constitute a complete defense to a civil or criminal action ..." In my opinion, it is not necessary. *We provide that the violation must be a willful one, not an inadvertent one,* and we wanted to tighten the bill as much as we possibly could. For this reason I am asking to amend it out. (Emphasis supplied.) House Legis. Journal, Sept. 21, 1978, at 3147.

The good faith defense was rendered unnecessary by the existing requirement in the Act of scienter, or evil intent. Obviously, one cannot intentionally violate the law and claim good faith, but one could inadvertently, in good faith, intercept a communication. We believe the Wiretap Act does not create liability in such a case, either criminally or civilly. Unlike the seller of a defective product, who for public policy reasons is strictly liable for a sale, despite the inadvertentness of the act, a person who intercepts a communication or discloses an intercepted communication inadvertently will not be punished in Pennsylvania.

### E. New Jersey

Plaintiffs compare Pennsylvania's statute to Louisiana's, "blaz[ing] its own trail by providing for strict liability in a civil case under § 5725." Pls.' Opp. at 23. In fact, the transcript of the legislative sessions provided by Plaintiffs suggest a place much closer to home to look for comparisons: New Jersey, whose statute was relied upon heavily by Pennsylvania's legislators in their work on the Wiretap Act. As Mr. Scirica said, "[T]he state we looked at most closely was New Jersey, which probably has the most effective wiretap unit of any state in the country. Most of the provisions in this bill were modeled after New Jersey." House Legis. Journal, Sept. 21, 1978, at 3146.

A New Jersey case discusses our issue more directly than any Pennsylvania case the parties have identified. In *Scott v. Scott,* 277 N.J.Super. 601, 649 A.2d 1372 (1994), a husband failed to defend a divorce complaint by his wife which included allegations that the husband violated New Jersey's Wiretap Act. The husband attempted to argue that because he was intoxicated, he was unable to form the requisite intent to bring about civil liability under the statute. *Id.* The court held that Mr. Scott needed a mental state of intent to be liable civilly, and found that he indeed possessed this mental state at the time of his actions. *Id.* at 614–615, 649 A.2d at 1378.

New Jersey patterned its legislation after Title III of the federal wiretap act. *State v. Diaz,* 308 N.J.Super. 504, 509, 706 A.2d 264, 267 (1998); *Cacciarelli v. Boniface,* 325 N.J.Super. 133, 137, 737 A.2d 1170, 1172 (1999). We believe it is appropriate to look to interpretation of the federal wiretap act for guidance where no significant difference exists between the wording of the state and the federal statutes. *Diaz, id.* at 510, 706 A.2d at 267, As Defendant SGI's brief points out, this court has frequently interpreted the state and federal wiretap acts the same with respect to a determination of liability. Def. SGI's Mot., citing, *inter alia, Fraser v. Nationwide Mut. Ins. Co.,* 135 F.Supp.2d 623, 632 n. 10 (E.D.Pa.2001).

### F. Civil Liability Without a Criminal Conviction

Plaintiffs state that while § 2520 of Title III (18 USCA § 2520) "has been interpreted by federal courts to require a plaintiff to prove the criminal cause of action in § 2511 in order to prevail in the civil cause of action at § 2520, this is not required for a civil cause of action under § 5725" of Pennsylvania's Wiretap Act. Pls.' Opp. at

22. Plaintiff's statement is misleading in several ways. In fact, neither Title III nor the Pennsylvania Act require a criminal wiretap conviction to assert civil claims, but both require the elements of the enumerated crime to be proven by a preponderance of the evidence before plaintiffs may collect civil damages.

■ United States Senate Report 99–541, which accompanied the 1986 amendments to the Communications Privacy Act (P.L. 99–508), explains, "The plaintiff may bring a civil action under section 2520 whether or not the defendant has been subject to a criminal prosecution for the acts complained of, but in the absence of such prosecution and conviction, it is the plaintiff's burden to establish that the requirements of this section are met." Senate Rpt. No. 99–541, at 27, reprinted in 1986 U.S.C.C.A.N. 3581. Thus, under federal law, a plaintiff can bring a civil suit without an underlying criminal conviction for wiretapping, but in so doing, must prove each element of the underlying criminal offense.

Likewise, the Pennsylvania Supreme Court has interpreted the Wiretap Act to allow civil liability under § 5725 without a prior criminal conviction under the Act. *Marks v. Bell Telephone Company of Pennsylvania,* 460 Pa. 73, 85, 331 A.2d 424, 430, n. 6 (1975). We believe the holding in *Marks* applies to the Wiretap Act in its present amended form.

In *Marks,* the phone company defendant was acquitted under the Wiretapping Act because it did not possess the requisite improper intent. The court set forth the following in a footnote discussing damages:

> The chancellor refused to award damages because he interpreted the statute as requiring a criminal conviction as a condition precedent to civil liability. Since the purpose of the damage provision is to encourage civil enforcement of the Act, all that is required to make the damage provision of the Act operative is a determination by the court, as was made here, that the Act was violated. *Id.*[1]

Criminal liability under the Wiretap Act, as with all criminal liability, requires proof of each element of Defendants' guilt beyond a reasonable doubt. 18 Pa.C.S.A. § 302. *See generally* regarding criminal burdens of proof, e.g., *Com. v. Hilbert,* 476 Pa. 288, 382 A.2d 724 (referencing the "never-shifting burden of proof beyond a reasonable doubt as to all the elements of a crime"). *See also U.S. v. Herring,* 993 F.2d 784, 788, 11th Cir.(Ala.1993) (applying the "beyond a reasonable doubt" standard to federal wiretap act defendants); *State v. O'Brien,* 774 A.2d 89, 110 (R.I.2001) (applying the same standard to R.I. wiretap act defendants).

■■ On the other hand, in Pennsylvania each element of civil liability, including liability for punitive damages, must be established by a preponderance of the evidence. *Sprague v. Walter,* 441 Pa.Super. 1, 67, 656 A.2d 890, 922 (1995). The preponderance of the evidence standard requires a substantially lighter evidentiary showing than the beyond a reasonable

---

1. The Court also said, "Although we deal here not with a criminal prosecution for a violation of the statute but a civil proceeding, the Act defines the criminal violation and civil wrong with the same words and leaves no doubt that the Legislature intended that only that conduct punishable by criminal penalties can subject the actor to civil liability." *Id.* at 428. Although this was true under the structure of the original Wiretap Act, the criminal and civil sections of the amended Act are now separate. Nonetheless, the legislature, in amending the Wiretap Act, left *Marks* fundamentally intact. Applying the Court's language to the present, amended Act, the only conduct punishable by criminal or civil penalties is intentional conduct.

doubt standard. Pennsylvania's standard jury instructions suggest that to prevail by a preponderance of the evidence, plaintiffs must only provide evidence that would make an "ordinary balance scale" tip "ever so slightly or to the slightest degree" in his favor. *See generally Pennsylvania Suggested Standard Civil Jury Instructions,* Pennsylvania Bar Institute, "5.50 (Civ) 'Burden of Proof.'" Proof that a defendant has acted criminally, beyond a reasonable doubt, exists only if no "reasonably careful and sensible person" would hesitate in a decision against that defendant. *Pennsylvania Suggested Standard Criminal Jury Instructions,* Pennsylvania Bar Institute, "7.01 (Crim) 'Presumption of Innocence: Burden of Proof; Reasonable Doubt.'" Therefore, it is possible for a Wiretap Act plaintiff to recover civil damages applying the preponderance of the evidence standard to the question of whether a defendant acted intentionally—even though the Defendants are acquitted or not charged criminally under the same statute.

We note also the holding in *One Lot Emerald Cut Stones and One Ring v. U.S.,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972), that an acquitted criminal defendant may not claim collateral estoppel barring a civil forfeiture proceeding.

> The acquittal of the criminal charges may have only represented "an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused. As to the issues raised, it does not constitute an adjudication on the preponderance-of-the-evidence burden applicable in civil proceed-

ings." (Citations omitted.) *Id.* at 235, 93 S.Ct. at 492.

Followed in *Com. v. Landy,* 240 Pa.Super. 458, 469, 362 A.2d 999, 1004 (1976); *Petition of Maglisco,* 341 Pa.Super. 525, 531, 491 A.2d 1381, 1384 (1985). In other words, civil forfeiture claims may go forward without criminal convictions, and we believe civil claims under the Wiretap Act may proceed without their criminal counterparts.

## G. Strict Civil Liability After Conviction

■ The inverse situation, however, is not true—a defendant could not be convicted criminally but be free from civil liability under the Wiretap Act. If a defendant was convicted of violating the Wiretap Act, it would automatically be liable for civil damages under the lighter preponderance of the evidence standard. We believe that what the *Boettger II* court meant when they referred to strict liability was strict, or automatic civil liability for defendants convicted of violating the Wiretap Act.[2]

## IV. CONCLUSION

After a criminal conviction of a violation of the Wiretap Act, strict civil liability follows. Civil liability can also be established without a criminal conviction if a plaintiff establishes intentional violations of the Act by a preponderance of the evidence.

An appropriate order follows.

### ORDER

AND NOW, this 29 of August, 2001, consistent with the foregoing opinion it is hereby ORDERED as follows:

---

2. It should be noted that not every state or federal jurisdiction applies the strict liability post-conviction standard set forth by Pennsylvania in *Boettger II. See generally* 18 U.S.C.A. § 2520, annotations 24 and 25, "Damages—Generally" and "Discretion of court, damages" (illustrating that the Fourth and Eighth Circuits, the Eastern District of North Carolina and the District of Connecticut allow the court discretion in determining whether to award damages, while the Seventh Circuit and the District of Puerto Rico, like the State of Pennsylvania, require strict liability, i.e. no judicial discretion.).

1. Defendant Dana Corporation's Motion for Partial Summary Judgment as to the Required Level of Intent Under the Pennsylvania Wiretap Act, filed on July 23, 2001, is deemed to be a Motion for a Pretrial Determination and is GRANTED.

2. Defendant Security Guards, Inc. Motion for Partial Summary Judgment, filed on July 23, 2001, is deemed to be a Motion for a Pretrial Determination and is GRANTED.

3. The Court finds and determines that in the absence of a criminal conviction a civil plaintiff must prove an intentional violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons.Stat.Ann. § 5701 *et. seq.*, in order to recover under 18 Pa.C.S.A. § 5725(a).

4. Defendant Dana Corporation's Motion For Leave to File a Reply Brief in Further Support of Dana's Motion for Partial Summary Judgment as to the Intent Requirement Under the Pennsylvania Wiretap Act, Motion to Suppress Portions of Plaintiffs' Opposition Or in the Alternative for Leave to File a Counter–Statement of Facts and Request for Oral Argument, filed on August 22, 2001, is GRANTED to the extent that they may file a reply brief and DENIED in all other respects.

5. Defendant Security Guards, Inc. Motion For Leave to File a Reply Brief and to Strike Portions of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions for Partial Summary Judgment, filed on August 22, 2001, is GRANTED to the extent that they may file a reply brief and DENIED in all other respects.

6. Defendant Dana Corporation's Unopposed Motion to Convert Previously Filed Motions for Partial Summary Judgment to Motions for a Pretrial Ruling Under Local Rule of Civil Procedure 16.1, filed on August 22, 2001, is GRANTED, but under Local Rule 17.1.1.