Reversed and remanded for a new trial consistent with this opinion.

826 A.2d 818

SURF COTTAGES HOMEOWNERS ASSOCIATION, INC., PLAINTIFF–APPELLANT, v. JANEL ASSOCIATES, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 1, 2003—Decided July 8, 2003.

Before Judges SKILLMAN, LEFELT and WINKELSTEIN.

*Carl W. Erler* argued the cause for appellant (*Berry, Sahradnik, Kotzas, Riordan & Benson,* attorneys; *Stephen B. Kotzas,* of counsel; *Mr. Erler,* on the brief).

Respondent did not participate in the appeal.

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The issue presented by this appeal is whether the "amount in controversy" that determines the jurisdictional limit of the Special Civil Part under *Rule* 6:1–2(a)(1) includes counsel fees. We conclude that the "amount in controversy" in a Special Civil Part action excludes counsel fees that are not capable of being calculated when the action is commenced.

Plaintiff is a homeowners association in Ortley Beach that imposes dues, fees and beach assessments upon members to conduct its operations. Defendant owns eight residences that are subject to these assessments. Plaintiff's by-laws provide that a member who fails to pay an assessment is subject to late fees, interest and "reasonable attorneys' fees."

In the spring of 2000, plaintiff imposed an assessment of $1,000 per unit to fund the purchase of a beach area adjoining its members' residences and roads. As the owner of eight units, defendant's total assessment was $8,000. Defendant failed to pay any of the assessment.

Plaintiff brought this action in the Special Civil Part to collect the unpaid $8,000 assessment as well as late fees, interest and attorneys' fees. When the action was brought, the jurisdictional limit of the Special Civil Part was $10,000.[1] Defendant failed to answer, and the court entered a default judgment in plaintiff's favor for $8,226.48, which consisted of the $8,000 in unpaid assessments, $2.48 interest and $224 for attorneys' fees and costs. However, defendant successfully moved to vacate the default judgment and filed an answer which included a counterclaim for the $5,000 cost of repairing a curb in front of its property that plaintiff had allegedly damaged and equitable relief involving issuance of beach badges as well as enjoyment of other benefits of association membership. The trial court subsequently granted plaintiff's motion for a summary judgment which dismissed defendant's counterclaim and entered judgment for the unpaid homeowners association assessment.

By the time summary judgment was granted, plaintiff's attorneys' fees exceeded $2,000. After initially entering judgment in the full amount of plaintiff's damages, including all attorneys' fees, the trial court sent a letter questioning whether it had authority to

---

[1] By an amendment to *Rule* 6:1–2(a)(1), which became effective on September 3, 2002, this jurisdictional limit was raised to $15,000. Pressler, *Current N.J. Court Rules*, comment on R. 6:1 (2003).

enter judgment for an amount in excess of the $10,000 Special Civil Part jurisdictional limit. Plaintiff's attorney briefed the issue, and the court subsequently issued a letter opinion which concluded that the attorneys' fees plaintiff had incurred in pursuing the action were encompassed by the Special Civil Part's $10,000 jurisdictional limit. Accordingly, the court entered an amended final judgment for $10,000 plus costs.

By enactment of chapter 405 of the Laws of 1983, the Legislature abolished the former County District Court and transferred that court's functions, powers and duties to the Superior Court. *L.* 1983, *c.* 405, § 1 and 3 (codified as *N.J.S.A.* 2A:4–3a and c.) (repealed 1991). Shortly after enactment of this legislation, the Supreme Court established, initially by order and subsequently by rule, the Special Civil Part of the Law Division. See Pressler, *supra,* comment on *R.* 6:1. Because the Supreme Court created the Special Civil Part in the exercise of its constitutional authority to allocate jurisdiction among the divisions and parts of the Superior Court, *N.J. Const.,* art VI, § 3, ¶ 3, *see O'Neill v. Vreeland,* 6 *N.J.* 158, 164–65, 77 *A.*2d 899 (1951), it is within the Court's exclusive province to determine the Special Civil Part's jurisdictional limit. The Court has exercised this authority by increasing the jurisdictional limit of the Special Civil Part from the previous $5,000 statutory limit of the County District Court, *N.J.S.A.* 2A:6–34(a) (repealed 1991), first to $7,500 in 1992, then to $10,000 in 1994, and most recently to $15,000 in 2002. Pressler, *supra,* comment on *R.* 6:1. It is similarly within the Court's exclusive province to decide how this jurisdictional limit shall be determined.

When this action was commenced, *Rule* 6:1–2(a)(1) provided that matters cognizable in Special Civil Part include:

Civil actions seeking legal relief when the amount in controversy does not exceed $10,000.

In addition, *Rule* 6:1–2(c) provides:

Where the amount recoverable on a claim exceeds the monetary limit of the Special Civil Part ..., the party asserting the claim may waive the excess over the applicable limit and recover a sum not exceeding the limit plus costs.

In *Lettenmaier v. Lube Connection, Inc.*, 162 *N.J.* 134, 741 *A.*2d 591 (1999), the Court concluded that counsel fees awarded under the Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –109, should not be considered part of the "amount in controversy" in calculating the then $10,000 jurisdictional limit of the Special Civil Part established by *Rule* 6:1–2(a)(1). The Court rested its decision on two alternative rationales. First, the Court concluded that counsel fees awarded under the Consumer Fraud Act should be considered "costs," which are excluded by *Rule* 6:1–2(c) from the $10,000 limit on the recovery that may be obtained in a Special Civil Part action. *Id.* at 139–43, 741 *A.*2d 591. Second, and directly relevant to this appeal, the Court concluded that even if counsel fees awarded under the Consumer Fraud Act could not be properly characterized as "costs,"

> they cannot, as a matter of logic, be included in the jurisdictional "amount in controversy." That phrase can refer only to the monetary damages that a plaintiff claims were sustained as a result of the defendant's actions, plus trebling. The reason is obvious. The amount of claimed monetary damages is the only amount that a litigant can calculate at the beginning of the litigation when determining whether or not to file in the Special Civil Part. What amount of counsel fees will be incurred as a result of the twists and turns of litigation is not ascertainable at that point. Those fees will accrue as the case proceeds and will indeed not even be calculable until the judgment is entered. Thus, for example, a plaintiff expecting a quick and inexpensive adjudication of his or her consumer complaint may incur hefty fees as a result of a hard fought defense by a well-heeled defendant or, as here, in defense of motions to vacate a default. Thus, the jurisdictional calculation of "amount in controversy", which can only be made at the outset, should not include counsel fees, even if they are not technically costs.
>
> If this is not the rule, plaintiffs with consumer claims of $2500 or $3000 will be required to file in the Superior Court, with its complex discovery and calendar delay, in order to be assured that counsel fees will be paid after treble damages. Such a state of affairs would confound the purposes behind the Special Civil Part Rules, which are designed to provide "a streamlined structure and practice for the inexpensive and expeditious disposition of the many relatively minor ... cases which make up the vast bulk of litigation in this state."
>
> [*Id.* at 143–44, 741 *A.*2d 591 (citations omitted).]

█ Although the Court's holding in *Lettenmaier* involved only counsel fee awards under the Consumer Fraud Act, the second rationale for this holding is equally applicable to any case in which the amount of potential counsel fees cannot be calculated at the

time a plaintiff decides whether to file a complaint in the Special Civil Part. This rationale does not turn on the language or policies of the Consumer Fraud Act but rather on the Court's interpretation of its own rules in light of considerations of efficient judicial administration and fairness to litigants. Therefore, we perceive no reason why the Court's holding in *Lettenmaier* that the "amount in controversy" under *Rule* 6:1–2(a)(1) excludes counsel fees that cannot be calculated when an action is filed should be confined to actions under the Consumer Fraud Act.

As in *Lettenmaier*, when plaintiff filed this collection action, it had no way of knowing whether its claim would be resolved quickly, thus generating minimal legal fees or, as it turned out, would require more protracted proceedings. In fact, plaintiff initially incurred only $224 in attorneys' fees and costs in obtaining a default judgment. It was only after defendant successfully moved to vacate the default judgment that plaintiff incurred additional attorneys' fees that resulted in a total liability in excess of $10,000. Thus, it is just as true in this case as in *Lettenmaier* that "the jurisdictional calculation of 'amount in controversy,' which can only be made at the outset, should not include counsel fees." *Id.* at 143, 741 *A.*2d 591.

Therefore, we reverse and remand for entry of an amended judgment which includes the full amount of reasonable attorneys' fees plaintiff incurred in this action.