**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0049-19T2

ANASTASIO G. KOKA,

      Plaintiff-Respondent/
Cross-Appellant,

v.

EGLANTINA SHEHAJ, and
DASHAMIR SHEHAJ, a/k/a
BRIAN SHEHAJ,

      Defendants-Appellants/
Cross-Respondents.

_____

      Submitted September 15, 2020 — Decided September 22, 2020

      Before Judges Yannotti and Mawla.

      On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. DC-13508-18.

      John P. Monaghan, attorney for appellants.

      Richard A. Vrhovc, attorney for respondent.

PER CURIAM

Defendants Eglantina and Brian Shehaj appeal from an August 14, 2019 judgment in favor of plaintiff Anastasio Koka adjudicating defendants liable for abuse of process and awarding Koka $23,638.92 in damages, counsel fees, and costs.  Koka cross-appeals from the judgment noting it failed to memorialize the trial judge's finding that defendants were also liable for malicious prosecution. We affirm the appeal and remand the cross-appeal with instructions to the trial judge to amend the judgment to include the malicious prosecution adjudication.

This dispute arose from three underlying municipal complaints involving defendants against Koka alleging terroristic threats, theft by unlawful taking, and criminal mischief.  By way of background, Koka's uncle is married to Eglantina's[1] sister.  Koka traveled from Greece to the United States and lived with defendants for twenty-nine days in 2017.  According to Eglantina, while she and Brian vacationed, Koka took personal property from their home and damaged their television, stove, and refrigerator.  She claimed she and Brian confronted Koka, a fight ensued, and Koka threatened to kill her in front of Brian.

---

[1] We utilize defendants' first names in order to differentiate them because they share a common surname.  We intend no disrespect.

A-0049-19T2

Shortly after Koka moved out of defendants' home, Eglantina signed the three municipal complaints, which required Koka to appear in Paterson Municipal Court and the parties to attend mediation. Defendants also invited Koka to their home to discuss the matter, during which the three spoke in Albanian. Brian recorded the meeting on his cell phone, which he and Eglantina "were going to use . . . in the case as proof." Eglantina took the recording to a lawyer's office and asked a secretary to put the "most necessary parts" onto a CD. Because the secretary did not speak Albanian, Eglantina translated the portions to include.

Mediation was unsuccessful. The terroristic threats complaint was downgraded to harassment and the three petty disorderly persons complaints were tried in the municipal court. In addition to the complaints, Brian played a role in assuring the prosecution of the municipal charges by addressing a letter to the court stating:

> I am bringing this legal action against [Koka] . . . . I [have] been witnessing the t[h]reats and issues that he [has] been causing my family. . . . [H]e said "I will make some money and I will kill you." I warned him that I was going to report him to the police and [i]mmigration.

Koka commuted two and a half to three hours from his home in Astoria, New York to Paterson twelve times for mediation and trial. On May 4, 2018,

A-0049-19T2

after the State concluded its case, the municipal court judge granted Koka's motion to dismiss the complaints, finding the State failed to meet the burden of proof.

After the trial, Eglantina submitted a signed letter to the municipal court asking the judge to reopen the complaints. Following a hearing, the judge declined to reopen the theft and terroristic threats complaints, but reopened the criminal mischief complaint. At the second trial, Koka arrived prepared, but the municipal prosecutor professed no knowledge of the complaint and was not ready to proceed. Although Eglantina filed the request to reopen the matter, she was also unprepared to proceed. The second trial ultimately occurred, and Brian and Eglantina testified, and following conclusion of the State's case the judge granted Koka's motion to dismiss.

Koka filed a complaint in this matter alleging malicious prosecution, malicious abuse of process, and intentional infliction of emotional distress, seeking damages and attorney's fees. The trial judge rendered an oral decision on June 27, 2019, finding defendants liable for an abuse of process and dismissing the other two counts. The judge awarded Koka damages of $10,428.26.

Defendants filed a motion to set aside the judgment or, in the alternative, stay the judgment pending appeal. On August 14, 2019, the trial judge denied the motion and amended the judgment to include attorney's fees and costs. In addition to the $10,428.26 damages, the judge awarded Koka $13,066.66 in attorney's fees and $144 for costs, for a total final judgment of $23,638.92. The judge included written findings adjudicating defendants liable for abuse of process. She also noted she erred in her oral findings when she stated Koka had not proved the malicious prosecution count.

The judge found Koka met his burden because following his acquittal in municipal court, he returned to New Jersey eight more times for the second municipal court trial as a result of defendants causing the municipal court to reopen the case. The judge concluded defendants acted in bad faith and with purpose to harass Koka and delay the case.

I.

On appeal, defendants raise the following arguments: 1) the trial judge erred by failing to consider the affirmative defense of reliance on counsel relating to the malicious prosecution claim; 2) the judge should have dismissed the complaint against Brian because he did not sign the complaints against Koka; 3) the judge erred in not admitting the CD containing admissions by Koka; 4)

A-0049-19T2

the judgment amount exceeds both the sum Koka claimed was owed in the pre-trial discovery exchange and the Special Civil Part's jurisdictional limits, and we should eschew precedent interpreting the jurisdictional limitation to exclude counsel fees; and 5) the trial judge erroneously overruled herself by finding a malicious prosecution because there was no evidence defendants acted with malice or ulterior motive. Koka's cross-appeal asserts the judgment does not reflect the judge's finding that he proved the malicious prosecution claim.

We defer to a trial judge's factual findings unless they "went so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citation and internal quotation omitted). Where "they are 'supported by adequate, substantial and credible evidence,'" a trial judge's factual findings will not be disturbed on appeal. In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (citation omitted).

Likewise, we defer to the credibility determinations of a trial judge. Ferdinand v. Agric. Ins. Co. of Watertown, N.Y., 22 N.J. 482, 492 (1956). Also, "a trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion . . . ." State v. Nantambu, 221 N.J. 390, 402 (2015) (quoting State v. Harris, 209 N.J. 431, 439 (2012)). However, "[a] trial court's

A-0049-19T2

interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, LP v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

### A.

We reject defendants' argument the trial judge erred by failing to consider the defense of reliance on the advice of counsel.  Prosecutors do not represent individuals in the same matter as private counsel, but instead "represent[] the State whose interest is served by an untainted judgment firmly rooted in facts alone."  State v. Land, 435 N.J. Super. 249, 272 (App. Div. 2014) (internal quotation omitted) (quoting State v. West, 29 N.J. 327, 338 (1959)).  Moreover, the facts demonstrate defendants' conduct, not advice of counsel, gave rise to Koka's abuse of process and malicious prosecution claims: Eglantina wrote to the municipal court to reopen the criminal mischief complaint, Brian's presented a letter to the court, and both defendants participated in securing and supplying an incomplete recording of Koka to the court.  For these reasons, the defense of reliance on advice of counsel is unavailing.

### B.

We also find no error in the trial judge's refusal to dismiss Brian from the case.  Joint tortfeasors are "two or more persons jointly or severally liable in tort

A-0049-19T2

for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J.S.A. 2A:53A-1. Vicarious liability is recognized for concerted tortious action, whether it be by agreement or substantial assistance, such as aiding and abetting. Podias v. Mairs, 394 N.J. Super. 338, 352 (App. Div. 2007). Aiding and abetting liability focuses on "whether a defendant knowingly gave 'substantial assistance' to someone engaged in wrongful conduct, not whether the defendant agreed to join the wrongful conduct." Id. at 353 (alteration in original) (citations, internal quotations, and emphasis omitted). Determining how much assistance is considered substantial is fact-sensitive. Ibid. Vicarious liability can be based on inaction, words of encouragement, or advice or encouragement to act. Id. at 353-54.

Although Brian did not sign the complaints against Koka, the judge found Brian's participation in the prosecution exposed him to liability as a joint tortfeasor. Indeed, Brian substantially assisted Eglantina's wrongful conduct through recording Koka on his phone and testifying they "were going to use it in the case as proof." Additionally, Brian corresponded with the municipal court in a letter stating: "I am bringing this legal action against [Koka]." We are

satisfied these facts support the trial judge's conclusion that Brian was liable as a joint tortfeasor for abuse of process and malicious prosecution.

C.

The trial judge's refusal to admit the recording created by defendants was not an abuse of discretion. The admissibility of sound recordings is "dependent upon a preliminary determination that the speakers can be identified and (1) the recording device was capable of taping the conversation or statement, (2) its operator was competent, (3) the recording is authentic and correct, and (4) no changes, additions, or deletions have been made in the recording." Cacciarelli v. Boniface, 325 N.J. Super. 133, 143 (Ch. Div. 1999) (citing State v. Driver, 38 N.J. 255, 287-88 (1962)). As precondition of admission, N.J.R.E. 901 requires "the proponent of evidence must present evidence sufficient to support a finding that the item is what its proponent claims."

The trial judge declined to admit the CD proffered by defendants because it did not contain the entire conversation and only had isolated portions of Koka's statements from a two-hour long discussion with defendants. Indeed, the trial judge referred to the municipal court transcript, wherein Brian admitted as much, noting the following exchange:

> [Koka's attorney:] Okay. And did [the attorney's secretary] put the entire conversation onto the disc?

9

[Brian:] We put the necessary parts.

[Koka's attorney:] The ones you wanted the judge to hear. Right?

[Brian:] That was . . . the most important. Okay. We put only the . . . important parts in it . . . .

[Koka's attorney:] And there's some conversation that took place with [Koka] that is not on that disc. Right?

. . . .

[Brian:] Yes. We only put the most important parts about what he wrecked at home.

Additionally, the municipal court transcript reveals the role defendants played in creating the recording undermined its authenticity as demonstrated by the following colloquy:

[Koka's attorney:] And [it's] in Albanian. Correct?

[Brian:] Yes.

[Koka's attorney:] And . . . the secretary doesn't speak Albanian. Right?

. . . .

[Brian:] I don't believe so.

[Koka's attorney:] Okay. So how did she know what important parts to put onto the disc?

[Brian:] My wife told her.  Okay.  My wife told her you're going to take this part right here, right here, stop here, don't take this and this.

The trial judge concluded she would not hear the CD evidence, "because it is not a complete copy of . . . what occurred that day, and it has been snipped." She also found that "it was determined by [defendants] as to what was the important parts and it's not in their discretion to do so."  She concluded, "[i]t's for the [c]ourt to determine what is important and what is not important, and because it does not contain the full record . . . it has been edited, and therefore is inadmissible."

We agree.  The selected portions of the conversation, translated by and placed onto the CD at the direction of Eglantina, whose testimony the judge found "bizarre, implausible, and untruthful," undermined the authenticity and admissibility of the CD.

## D.

We reject defendants' argument that the trial judge erred when she found them liable for abuse of process, and reconsidered her decision and found them also liable for malicious prosecution.  As Koka asserts on cross-appeal, the trial judge correctly found defendants liable on both counts.

11

"[W]hen the underlying proceeding is civil rather than criminal, or based on . . . disorderly persons . . . involving none of the physical constraints ordinarily attendant to the criminal process–the cause of action is known as malicious use of process and requires proof of a deprivation of liberty or 'other special grievance.'" Turner v. Wong, 363 N.J. Super. 186, 203-04 (App. Div. 2003) (quoting Vickey v. Nessler, 230 N.J. Super. 141, 146 (App. Div. 1989)). The term abuse of process "implies a litigant's improper use or perversion of legal process through actions undertaken for the purpose other than that intended by the law . . . ." Murakush Caliphate of Amexem Inc. v. New Jersey, 790 F. Supp. 2d 241, 268 n.24 (D.N.J. 2011). "The tort of malicious abuse of process lies not for commencing an improper action, but for misusing or misapplying process after it is issued." Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 431 (App. Div. 2009) (citing Baglini v. Lauletta, 338 N.J. Super. 282, 293 (App. Div. 2001)).

The process is abused if, after process is issued, the defendant reveals an ulterior purpose he or she had in securing it by committing further acts "'whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff.'" Ibid. (quoting Ruberton v. Gabage, 280 N.J. Super. 125, 130 (App. Div. 1995)).

The defendant's use of the process must be "coercive" or "illegitimate." Id. at 431-32 (quoting Ruberton, 280 N.J. Super. at 130-31).

The trial judge found Koka proved Eglantina signed the municipal complaints against him despite there being "no evidence whatsoever, either in the underlying proceedings or . . . at this proceeding that said damage took place." She also noted defendants asked Koka to come to their house to discuss the complaints, but unbeknownst to him, Brian recorded those discussions and put them on a CD in an attempt to use them in the municipal court matter. Furthermore, after the municipal judge dismissed the complaints, Eglantina wrote to the court to reinstate the complaints. The judge concluded these two actions showed ulterior purpose by which defendants intended to coerce or oppress Koka.

In addition, the elements of a malicious prosecution action "arising out of a criminal complaint require[] proof that the defendant instituted a criminal action against the plaintiff, that defendant was actuated by malice, that there was an absence of probable cause for the criminal complaint, and that it was terminated favorably to the plaintiff." Campione v. Adamar of N.J., Inc., 302 N.J. Super. 99, 120 (App. Div. 1997) (citing Lind v. Schmid, 67 N.J. 255, 262 (1975)). The "essence" of the action is lack of probable cause. Brunson v.

13

Affinity Fed. Credit Union, 199 N.J. 381, 394 (2009) (citing Lind, 67 N.J. at 263). Plaintiff must also show a special grievance when the underlying process was quasi-criminal. Klesh v. Coddington, 295 N.J. Super. 1, 3-4 (App. Div. 1996).

There is sufficient credible evidence in the record to support the judge's finding that Koka proved his malicious prosecution claim. Defendants filed three complaints against Koka in municipal court, which were dismissed. Malice was demonstrated when defendants (1) wrote to the court to reinstate the complaints after their dismissal; and (2) recorded Koka and isolated his statements on a CD in an attempt to use them in the underlying proceeding. The municipal complaints lacked probable cause because there was no evidence adduced in the municipal court proceeding or in this case supporting defendants' claim that Koka damaged their property.

Although the trial judge initially found no malicious prosecution, she reconsidered that decision, finding Koka's eight additional trips from his home in New York to the second trial on the reopened complaint in New Jersey constituted a special grievance. The judge further found these additional appearances subjected Koka to double jeopardy and were caused by defendants. The record supports the judge's findings.

14

With respect to the cross-appeal, although the trial judge corrected her findings and found Koka proved the malicious prosecution claim, the judge did not amend the judgment to include the adjudication. For these reasons, we remand this aspect of the judgment for the judge to amend it accordingly.[2]

E.

Finally, defendants urge us to disregard our holding in Surf Cottages Homeowners Ass'n v. Janel Assocs., Inc., 362 N.J. Super. 70 (App. Div. 2003) and reverse the judgment for exceeding the Special Civil Part's jurisdictional limit. This argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We note, however, that a matter is cognizable in the Special Civil Part where the amount of relief sought does not exceed $15,000. R. 6:1-2(a)(1). However, in Surf Cottages, we held that counsel fees are not included in the amount in controversy. 362 N.J. Super. at 74-75.

Here, the portion of Koka's judgment that exceeds the $15,000 pertains to the counsel fees he incurred and is therefore recoverable. Defendants have not

---

[2] Koka's brief stipulates he does not seek additional damages for this claim.

15

presented any "special justification"[3] for departing with the precedent set by <u>Surf Cottages</u>. Accordingly, we decline to disturb the judgment.

Affirmed in part for entry of a corrected judgment and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] <u>See</u> <u>State v. Brown</u>, 190 N.J. 144, 157 (2007) (holding "stare decisis carries such persuasive force that . . . departure from precedent [must] be supported by some special justification.").